J-S08029-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: R.B., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: R.H., NATURAL MOTHER | No. 1478 WDA 2017 |

Appeal from the Order entered September 11, 2017,
in the Court of Common Pleas of Allegheny County,
Orphans' Court, at No(s): CP-02-AP-0000095-2017.

BEFORE: LAZARUS, J., KUNSELMAN, J., and STEVENS, P.J.E.*

MEMORANDUM BY KUNSELMAN, J.:                     **FILED MAY 30, 2018**

Appellant, R.H. ("Mother"), appeals the order involuntarily terminating her parental rights to her son, R.B. ("Child"), born in October of 2014, pursuant to 23 Pa.C.S.A. § 2511(a)(2); (a)(8) and (b). For the reasons that follow, we affirm.

In its Pa.R.A.P. 1925(a) opinion, the trial court set forth the following facts and procedural history relevant to Mother's appeal:

> [Child] in this matter came to the attention of the Allegheny County Office of Children, Youth and Families ("CYF") on February 24, 2016, when the Braddock Police department contacted CYF concerning an unidentified child who had been dropped off at the police station. CYF obtained an [Emergency Custody Authorization] on the same day and was able to identify [Child] when Mother contacted the caseworker. [Child] was adjudicated dependent on April 13,

*Former Justice specially assigned to the Superior Court.

2016. At the time of adjudication, drug and alcohol treatment was identified as the primary issue to be addressed. Goals were also established for Mother to obtain mental health treatment, maintain consistent visitation, attend a parenting program, and acquire stable housing. […]

The evidence at the [termination] hearing showed that Mother has not successfully completed any of the established goals. Mother failed to successfully attend or complete a mental health treatment program. Mother also failed to complete a parenting program. At the time of the hearing, Mother had not secured stable housing. Although [Child] was placed in February 2016, the CYF supervisor testified that Mother had not begun consistent visitation until a few months prior to the September 2017 hearing. Finally, Mother, who has struggled with drug addiction for the past ten years, failed to attend and complete recommended drug and alcohol treatment. Mother did not appear for 18 to 20 requested drug and alcohol screens. Mother's lack of progress toward any of the established goals persisted through the duration of the case.

Trial Court Opinion ("T.C.O."), 12/17/17, at 1-3 (record citations omitted).

Throughout the dependency proceedings, Child was represented by a staff attorney from KidsVoice who has served in the role of guardian *ad litem* ("GAL"). Upon Mother's indication that she would contest the termination of her rights, the trial court considered the appointment of legal counsel for Child. KidsVoice requested to be appointed; since Child was only two years old, KidsVoice argued that Child's legal interests and best interests were aligned. CYF did not object, but Mother did and requested that the trial court appoint separate counsel. The trial court denied Mother's request and appointed KidsVoice as legal counsel. The trial court granted CYF's petition to terminate Mother's parental rights on September 11, 2017.

On appeal, Mother does not contest that grounds existed to terminate her parental rights, per 23 Pa.C.S.A. § 2511(a)(2); (a)(8). She only raises the following issues:

> 1. Did the trial court abuse its discretion and/or err as a matter of law in appointing KidsVoice as counsel for [Child] when an apparent conflict between the legal interests of [Child] and the interests of KidsVoice in representing the best interests of [Child] in the underlying dependency proceedings was raised by Mother?
>
> 2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that termination of Mother's parental rights would serve the needs and welfare of [Child] pursuant to 23 Pa.C.S.A. § 2511(b)?

Mother's Brief, at 6.

Mother's first contention is that the trial court ran afoul of our Supreme Court's recent decision in *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), in which the Court held that trial courts must appoint counsel to represent the legal interests of any child involved in a contested termination proceeding pursuant to 23 Pa.C.S.A § 2313(a).

Section 2313(a) provides:

> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A § 2313(a).

Appointment of counsel representing the child is mandatory, and the court's failure to do so is legal error. **In re Adoption of T.M.L.M.**, --- A.3d ---, 2018 Pa. Super. 87 (Pa. Super. Apr. 13, 2018)[1] (**citing In re Adoption of G.K.T.**, 75 A.3d 521, 526 (Pa. Super. 2013)) (**see also In re E.F.H.**, 751 A.2d 1186, 1189–90 (Pa. Super. 2000)). **See also In re Adoption of N.A.G.**, 324 Pa. Super. 345, 471 A.2d 871 (1984) (holding 23 Pa.C.S.A. § 2313(a) creates a statutory right for a child to have counsel appointed who actively advances his or her needs and welfare and owes loyalty exclusively to him or her).

In a fractured opinion, our Supreme Court recently interpreted 23 Pa.C.S.A. § 2313(a) in **L.B.M.**, **supra,** 161 A.3d 172. In Section I of **L.B.M.**, a section joined by five justices, the Court held that courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding pursuant to 23 Pa.C.S.A. § 2313(a). **L.B.M.**, 161 A.3d at 180. In Section II–A of the opinion, a section joined by five justices, Justice Wecht explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court. **Id.** at 174.

_____

[1] We recognize that the orphans' court did not have the benefit of reading this opinion prior to its termination hearing.

Critically, the Justices disagreed on whether the role of counsel may be filled by a guardian *ad litem* (GAL) who also represents child's best interests. In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests cannot be represented by a GAL. *Id.* at 180–82. However, the Court's remaining four Justices disagreed with that portion of the lead opinion, and opined, in a series of concurring and dissenting opinions, that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. *Id.* at 183–93. **See also In re D.L.B.**, 166 A.3d 322, 329 (Pa. Super. 2017) (interpreting **L.B.M.** and declining to remand for appointment of additional counsel for child who was represented by an attorney who advocated for child's non-conflicting best and legal interests).

A majority of the justices in **L.B.M.** noted that there are times where a child may be too young to express his or her wishes and thus too young to have divergent legal interests and best interests. 161 A.3d 172, 181. This was the case in **D.L.B.**, **supra**. In that matter, we ruled there was no error when the orphans' court appointed only a GAL, but failed to appoint legal counsel. The critical difference in **In re D.L.B.** is that the child in that case was only eight months old at the time of the termination. We have held that a child

who was nearly six years old was old enough to articulate a preferred outcome. *See T.M.L.M.*, 2018 Pa. Super. 87, at 4.[2]

Our review of the record reveals that the subject child in this case was similarly too young to have divergent best and legal interests. At the time of the termination hearing, Child was approximately a month shy of his third birthday. He spent the first 16 months of his life in Mother's care. Then he was removed by CYF and spent another 18 months outside of her care. As both this Court and our Supreme Court have articulated, this is the type of child who is too young or too cognitively unable to express his wishes. While this case poses a factual distinction from our cited precedents – namely, that Cynthia Moore purported to have represented both Child's legal and best interests – we find the distinction to be irrelevant in this case. The trial court did not err in denying Mother's request for a separate appointment. Because this child was too young to have divergent interests, we presently decline the invitation to address whether Mother followed proper procedure to have the KidsVoice GAL disqualified as counsel. *See* T.C.O., at 5, Footnote 25.

Mother argues that *D.L.B.* was wrongly decided. *See* Mother's Brief, at 22. "It is beyond the power of a Superior Court panel to overrule a prior decision of the Superior Court, except in circumstances where intervening

_____

[2] We note that there is a pending matter before an *en banc* panel of this Court. We may decide this case without further delay as the *en banc* panel deliberates a matter concerning older children where no appointment of legal counsel was ever made. Here, the case involves both a child too young to have divergent interests, as well as an actual appointment of legal counsel – albeit counsel who represented the child's legal and best interests.

authority by our Supreme Court calls into question a previous decision of this Court." *See, e.g., Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006). Thus, we cannot overrule *D.L.B.*, and Mother's first issue is without merit.

We turn now to Mother's second issue and to the substantive case. We review an order terminating a parent's rights for an abuse of discretion or error of law. *In re Adoption of S.P.,* 47 A.3d 817, 826 (Pa. 2012). We must accept the credibility determinations and factual findings of the trial court that are supported by the record. *Id.* This Court may not reverse a termination order simply because we would have reached a different result based on the same facts. *Id.*

Under section 2511 of the Adoption Act, the trial court must engage in a bifurcated process. First, the trial court must examine the parent's conduct under section 2511(a). *In re Adoption of R.J.S.*, 901 A.2d 502, 508 (Pa. Super. 2006). The burden of proof is on the petitioner to establish by clear and convincing evidence the existence of grounds for termination under section 2511(a). *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003). If the trial court finds termination is warranted under section 2511(a), it must then turn to section 2511(b) and determine if termination of the parent's rights serves the child's needs and welfare. *In re I.E.P.*, 87 A.3d 340, 344 (Pa. Super. 2014). Instantly, Mother does not contest that the grounds for termination were unproven. She only contests that termination of her rights would not meet the needs and welfare of Child.

- 7 -

We now turn to subsection (b), which states:

> **Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.

23 Pa.C.S. § 2511(b). Under section 2511(b), we inquire whether termination of parental rights would best serve the developmental, physical and emotional needs and welfare of the child. *In re C.M.S.*, 884 A.2d 1284, 1286-87 (Pa. Super. 2005). Needs and welfare is a legal concept denoting certain minimum requirements to which all children are entitled, including a tangible dimension – e.g., adequate housing, clothing and food – and an intangible dimension – e.g., love, comfort, security and stability. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citation omitted). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *C.M.S.*, 884 A.2d at 1287 (citation omitted).

The mere finding of a parent-child bond does not preclude termination of parental rights. Rather, the trial court must examine the status of the bond to determine whether its termination "would destroy an existing, necessary and beneficial relationship." *In re Adoption T.B.B.,* 835 A.2d 387, 397 (Pa. Super. 2003). "[A] court may properly terminate parental bonds which exist **in form** but not **in substance** when preservation of the parental bond would consign a child to an indefinite, unhappy, and unstable future devoid of the

irreducible minimum parental care to which that child is entitled." ***In re J.W.***, 578 A.2d 952, 958 (Pa. Super. 1990) (emphasis in original). Expert testimony is not required for the trial court to determine if there is a positive bond between a parent and his child. ***In re K.K.R.-S.***, 958 A.2d 529, 533 (Pa. Super. 2008).

In the instant matter, this child was nearly three years old at the time of the TPR hearing. He had been in foster care for the previous 18 months. Mother hardly visited Child except in the few months immediately prior to the termination. During this time apart from her child, Mother admitted to continued drug use and admitted that she "can barely take care of herself." ***See*** N.T., 9/5/17, at 23. The forensic psychologist found that Mother does not consider her actions. ***Id.,*** at 49. While Child recognizes his Mother, referring to her as "Mommy," this bond is not the beneficial sort that would preclude a termination of rights. To the extent that Child would experience a loss if he could not see Mother again, such a negative effect is entirely outweighed by the stability and security that termination would bring. ***Id.***, at 58. The psychologist further testified that termination of Mother's rights is essential for Child's well-being. ***Id.*** Indeed, the trial court found that Child, whose primary attachment is to his foster parents, is thriving in their care. ***Id.***, at 52; ***see also*** T.C.O., at 6. It is clear that no necessary or beneficial relationship exists between Mother and Child. The trial court relied on sound, clear and convincing evidence when it determined that termination of the parental rights would best serve Child's needs and welfare.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/30/2018