415 A.2d 23

**In re Adoption of F.D.S. and G.M.S.**

**Appeal of C.S.S.**

Supreme Court of Pennsylvania.

Argued March 3, 1980.

Decided May 30, 1980.

Timothy P. O'Brien, Neighborhood Legal Services Ass'n, Pittsburgh, for appellant.

Craig E. Wynn, Arthur S. Herskovitz, Aliquippa, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

This is an appeal from a decree entered in the Court of Common Pleas of Beaver County, Orphans' Court division, ordering the involuntary termination of appellant's parental rights with respect to her minor children, F.D.S. and G.M.S.

On February 2, 1978, a petition was filed in the Court of Common Pleas of Beaver County, Orphans' Court division, by F.M.S. and G.M.S., the paternal grandparents of F.D.S. and G.M.S., minor children, seeking the involuntary termination of appellant's parental rights. A hearing was held on the petition on March 10, 1978. On October 10, 1978, the court entered a decree nisi, and filed an opinion in support thereof, granting the petition. Exceptions were filed and argued. On May 31, 1979, the Orphans' Court entered a final decree and filed an opinion dismissing appellant's exceptions and terminating her parental rights. Hence this appeal.

The facts are as follows: Appellant C.S.S., and M.S. were married on November 16, 1974, and began residing in Johnstown, Pennsylvania. On March 8, 1975, F.D.S. was born. In January, 1976, appellant left Johnstown and went to Empo-

rium, Pennsylvania, to the home of her stepmother to await the birth of her second child. That child, G.M.S., was born on February 7, 1976.

Early in March, 1976, appellant left her children in Emporium and traveled to Aliquippa, Pennsylvania, in Beaver County, to the home of her husband's parents, appellees herein. At that time, appellant signed a voluntary placement agreement delivering her children into the custody of the Cameron County Child Welfare Services.

In April, 1976, appellant contacted the Child Welfare Services, obtained custody of her children, and on April 10, 1976, returned with them to Aliquippa.

In September, 1976, appellant left her children with appellees and returned to Emporium without them.[1] F.D.S. and G.M.S. have resided with their grandparents, appellees, from that date. In the period from September, 1976, when appellant left her children in appellees' care, to the March 10, 1978, hearing on appellees' petition, appellant visited the children twice. The record indicates appellant visited her children in April, 1977, at Easter, for "a few days." Then again, eight months later, at Christmas, 1977, appellant visited her children.[2]

In addition to two visits during the period September, 1976, to March, 1978, appellant communicated with her children via "a few letters," and a third visit on the eve of the termination hearing in March, 1978. Moreover, commencing in January, 1978, appellant sent five money orders to appellees, totalling $120, for the childrens' support.

Appellant now advances two general assignments of error; the first assails the sufficiency of the evidence to support the decree.

1. Appellant and her husband subsequently divorced.

2. Appellant argues the record shows she visited her children a third time, in November, 1976. While it is true the director of the Cameron County Child Welfare Services testified such a visit was arranged for November 11, 1976, there is also testimony of record that no visit occurred at that time. Credibility is for the trier of fact. *In re William L.*, 477 Pa. 322, 383 A.2d 1228 (1978), *cert. denied* 439 U.S. 880, 99 S.Ct. 216, 58 L.Ed.2d 192.

■ The standard of our review on an appeal from a decree terminating parental rights is as limited as it is well settled: We will affirm if the decree was supported by competent evidence. *In re Adoption of Baby Boy P.*, 479 Pa. 138, 387 A.2d 873 (1978); *Matter of T.M.S. and D.R.S.*, 476 Pa. 138, 381 A.2d 1263 (1977).

Section 311 of the Adoption Act provides as follows: "§ 311. Grounds for involuntary termination. The rights of a parent in regard to a child may be terminated after a petition filed pursuant to section 312 and a hearing held pursuant to section 313, on the ground that:

(1) The parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child, or has refused or failed to perform parental duties." Act of July 24, 1970, P.L. 620, No. 208, art. III, § 311, 1 P.S. § 311.

■ We have held that parental rights may be terminated on either of the bases outlined in the statute, that is, when the parent has evidenced a settled purpose of relinquishing parental claim to a child, or where a parent has refused or failed to perform parental duties. *Matter of Adoption of David C.*, 479 Pa. 1, 387 A.2d 804 (1978). Instantly the Orphans' Court found appellant had refused or failed to perform her parental duties.

It is true that during the period September, 1976 to March, 1978, appellant visited with her children twice, sent "a few letters," telephoned occasionally to inquire into their condition, and sent $120 toward their support. But we have repeatedly held that, for purposes of this section, "the parental obligation is a positive duty which requires affirmative performance . . . [citations omitted] . . . . This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child . . . [citations omitted] . . . . Because a child needs more than a benefactor, parental duty requires that a parent 'exert himself to take and maintain a place of importance in the child's life.' " *In re Involuntary*

*Termination of Parental Rights of S.C.B. and K.T.*, 474 Pa. 615, 624, 379 A.2d 535, 540 (1977).

In light of the standard we have enunciated, and in light of the scope of review in such cases, we cannot say the decree of the Orphans' Court is not supported by competent evidence of record.

Appellant, however, asserts that her failure to perform parental duties, if any, can be reasonably explained, and arose from circumstances beyond her control. Specifically, appellant argues her lack of adequate transportation and finances rendered the trip from Emporium to Aliquippa one very difficult for her to make. Appellant additionally points to two planned visits which she was forced to cancel; one because of car trouble and a second because appellant broke her ankle.

Appellees, however, correctly observe that such obstacles as may have rendered appellant's parental obligations more difficult of performance were created by appellant herself. Her decision to leave Aliquippa without her children was one voluntarily made, as was her decision not to return. " . . . [T]he parent must remain cautious not to place himself voluntarily in a position that denies him the full opportunities of being a parent he otherwise would have. If he does place himself in such a position, he has no cause to complain when his performance of parental duties.is judged by a more demanding standard." *Termination of Parental Rights of J.R.M.*, 96 Dauphin 368, 371 (1974), quoted in *Matter of Adoption of David C., supra*, 479 Pa. at 10, 387 A.2d at 808. We consequently find no merit in appellant's assertion that her failure to perform her parental duties may be reasonably explained.

Appellant next argues she was denied a fair and impartial determination in that the Orphans' Court was biased against her as a recipient of free legal assistance.

The claim of bias was not included in appellant's written exceptions to the decree nisi, and appellees argue that, as a consequence, the issue has not been properly preserved for

our review. The Orphans' Court concluded the issue had been waived, although in its opinion that court proceeded to address the claim of bias on its merits, concluding that if the claim were preserved it would be without merit.

Appellant asserts that although the claim of bias was not included in written exceptions, it was included in her brief in support of her exceptions, was orally argued, and the Orphans' Court was presented with an opportunity to consider, and did in fact consider the question.

It is of course true that Pa.R.C.P. 1518 clearly states that "[m]atters not covered by exceptions are deemed waived, unless, prior to final decree, leave is granted to file exceptions raising these matters." But it is also true that in Orphans' Court matters we are guided by a principle of liberal construction of rules enunciated in Orphans' Court Rule 2.1.

"The rules adopted by the Supreme Court regulating the practice and procedure of the Orphans' Courts of this Commonwealth, and the rules adopted by such courts, shall be liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable. The court at every stage of any action or proceeding may disregard any error or defect of procedure which does not affect the substantial rights of the parties in interest."

Particularly where the claim raised is one of bias, and where the court below was presented with an opportunity, which opportunity it in fact seized, to pass upon the issue, we do not believe the integrity of the appellate process is unduly threatened by our addressing the question as well.

Turning then to the merits of the issue, we do not find appellant's claim persuasive. The Orphans' Court did indeed utter several ill-considered and unwise remarks. The court's view as to the wisdom, or lack thereof, of providing free legal services to a party could not possibly be more irrelevant. But such remarks, improper as they are, do not force a conclusion that the court was biased. Appellant has

not pointed to the record for illustrations of the court's alleged bias; our review of the record convinces us appellant could not do so. The court gave wide latitude to both parties to present their cases, interposed himself only even-handedly, and entertained argument without comment. As such the instant case is readily distinguishable from *Milligan v. Davison*, 244 Pa.Super. 255, 367 A.2d 299 (1976), upon which appellant relies, and in which palpable bias was ascertainable on the record. And in light of our holding, *supra*, that the decree in the instant case was supported by competent evidence, we do not find in it support for appellant's assertion. We are constrained, then, to find that appellant's claim of bias is without merit.

Decree of the Orphans' Court affirmed. Each party to bear own costs.