471 A.2d 871

**In re ADOPTION OF N.A.G. and A.B.G.**

**Appeal of B.G.**

Superior Court of Pennsylvania.

Argued Oct. 3, 1983.

Filed Feb. 10, 1984.

Francis X. Clark, Norristown, for appellant.

Lindley M. Cowperthwait, Jr., Norristown, for participating party.

Before WICKERSHAM, WIEAND and LIPEZ, JJ.

WIEAND, Judge:

In this appeal from a final decree terminating the parental rights of a natural father to his two children, we review the proceedings to determine whether the decree was supported by evidence that was clear and convincing. We must also determine whether the proceedings and the decree based thereon are to be invalidated because the hearing court erroneously denied a request to appoint counsel to represent the children during the evidentiary hearings.

The rights of a parent to a child may be terminated if a "parent by conduct continuing for a period of at least six months either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." 23 Pa.C.S. § 2511(a)(1). In ter-

minating the rights of a parent, a court is required to "give primary consideration to the needs and welfare of the child." 23 Pa.C.S. § 2511(b). Parental rights may not be terminated in the absence of evidence that is clear and convincing. *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re T.R.*, 502 Pa. 165, 465 A.2d 642 (1983); *In re Adoption of Durham*, 320 Pa.Super. 508, 467 A.2d 828 (1983). On appeal, the standard of review is limited to a determination of whether the decree was supported by competent evidence. *In re Adoption of B.D.S.*, 494 Pa. 171, 176–177, 431 A.2d 203, 206 (1981); *In re Adoption of J.S.M., Jr.*, 492 Pa. 313, 316, 424 A.2d 878, 879 (1981); *In re J.L.Z.*, 492 Pa. 7, 8–9, 421 A.2d 1064, 1064 (1980); *Matter of M.L.W.*, 307 Pa.Super. 29, 31, 452 A.2d 1021, 1023 (1982).[1]

B.G. and M.C. were married in 1967, separated in 1972 and divorced in 1977. Two children were born of their marriage. At all times since the separation of their parents, the children have resided with M.C., their mother. She has remarried and lives with her husband and children in Montgomery County. B.G. also remarried. He lived with his wife in Florida, but was divorced in 1979. Prior to the hearings in this matter, the only occasion on which the children had seen their father after 1972 was at a nonsupport proceeding in 1974. Otherwise, appellant had neither written to nor telephoned his children. He displayed no interest in their welfare. His only contact with the children consisted of one gift and a chance conversation with his son when, in 1978, the son happened to answer the phone when appellant called his former wife to speak with her regarding a support settlement. Prior to 1978 appellant had refused to pay a support order requiring him to contribute to the support of his children. By agreement, his duty of support was terminated in 1978. Thereafter, he attempted to send

---

1. We recognize that the scope of review in cases of involuntary termination of parental rights has been argued before a court en banc in the case of *In Re James J.*, No. 2776 Philadelphia, 1981. However, there is no potential change in the scope of review that would affect the result in this case.

one of the children a balloon birthday greeting, but the child was away at camp when it arrived and M.C. refused to accept it. There was no other communication and no parental relationship. Appellant's second wife confirmed his lack of interest in and concern for his children. She testified that B.G. had told her on various occasions that he had never wanted to have children with M.C., had no intention of supporting them, and did not care if he never saw them again.

"Our cases are clear that '[a] child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this Court has held that the parental obligation is a positive duty which requires affirmative performance.... The affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.... Because a child needs more than a benefactor, parental duty requires that a parent "exert himself to take and maintain a place of importance in the child's life." ' "

*In re Adoption of R.W.G.*, 494 Pa. 311, 314–315, 431 A.2d 274, 276 (1981) (citations omitted), quoting *In re Burns*, 474 Pa. 615, 624–625, 379 A.2d 535, 540 (1977). See: *In re J.L.Z., supra; In re Adoption of F.D.S.*, 490 Pa. 43, 415 A.2d 23 (1980); *In re Baby Boy Robinson*, 486 Pa. 604, 406 A.2d 1365 (1979); *In re W.M., III*, 482 Pa. 123, 393 A.2d 410 (1978); *In re Adoption of McCray*, 460 Pa. 210, 331 A.2d 652 (1975); *Matter of Adoption of K.S.C.*, 309 Pa.Super. 550, 455 A.2d 1221 (1983).

■ The evidence in this case was clear and convincing. It was sufficient to lead the trier of the facts directly and compellingly to the conclusion that for ten years appellant had refused to perform parental duties. Although appellant attempted to explain his derelictions on the basis of obstructions placed in his path by M.C., the trial court found

that his testimony lacked credibility and concluded that his disassociation from his children had been wholly voluntary. The court's findings are fully supported by the record.

■ It was also determined that the children had been happily growing toward maturity with their mother and stepfather. They referred to their stepfather as "Dad" and expressed desires to be adopted by him. They had no real recollection of their natural father. The trial court could properly conclude, as it did, that the children's best interests would be served by terminating the parental rights of the natural father so that the new relationship with their stepfather could ripen fully and receive legal recognition by adoption.

■ The Adoption Act, at 23 Pa.C.S. § 2313(a), mandates that counsel be appointed to represent children in an involuntary termination proceeding when the proceeding is being contested by one or both parents. In the mistaken belief that the appointment of counsel was discretionary, the hearing court denied a request made early in the hearings by B.G. that the children be represented by court appointed counsel. After the hearings had been completed and B.G. had filed exceptions to the decree and to the trial court's failure to appoint counsel, the court realized its error. It thereupon made an appointment and directed appointed counsel to review the record, interview the children and conduct an investigation. Appointed counsel subsequently filed a report in which he confirmed the wishes of the children to be adopted by their stepfather and expressed the opinion that a termination of the natural father's parental rights would be in the best interests of the children. Thereafter, appellant's exceptions were dismissed, and a final decree was entered.

■ This was contrary to the statute's procedural mandate. The purpose of the statutory requirement, however,

was not to create a right in appellant. It was not intended to benefit a contesting parent or parents or to enhance by force of numbers the position of a contesting adult.[2] Its purpose, rather, was to guarantee that the needs and welfare of the children would be advanced actively by an advocate whose loyalty was owed exclusively to them. In the instant case, the children and their belatedly appointed counsel are satisfied with the court's decree. They believe their needs and welfare can best be met by severing ties with their biological father. The children have not complained because they were not separately represented by counsel during the hearings and have not requested a new hearing so that they might be represented. They have filed no appeal. They do not wish to alter in any way the court's decree. Appellant, who was represented by his own counsel, has not been prejudiced in the presentation of his case by the absence of counsel for the children. He cannot assert procedural rights for the children which they, themselves, do not wish to assert. Thus, although the rule requires appointment of counsel for a child at as early a point in the proceedings as feasible, the court's failure to make a pre-hearing appointment in the instant case was harmless. The children are now represented by counsel who has acted to protect their interests. We perceive no valid purpose to be served by remanding for a new hearing which can serve no substantive purpose.

The decree is affirmed.

2. Prior to passage of the Adoption Act in 1980, the appointment of counsel for children who were the subject of involuntary termination proceedings was unnecessary as long as the parties and the trial court provided for their best interests. *Matter of Kapcsos,* 468 Pa. 50, 360 A.2d 174 (1976). In *Kapcsos,* Justice Manderino, writing a dissenting opinion, joined by Justice Nix, suggested that although the legislature had not yet provided for appointed counsel, it was incumbent on the Court to so provide. This view was repeated again in 1979 by Justice Manderino's dissent to a per curiam affirmance of a decree terminating parental rights. *In re Thomas,* 484 Pa. 532, 399 A.2d 1063 (1979) (Dissenting Opinion by Manderino, J.). The statutory requirement that counsel be appointed appears to have been the legislature's response thereto.