J-S38044-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: T.M.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| IN RE: K.W., A MINOR | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.R., NATURAL MOTHER | : | No. 397 WDA 2018 |

Appeal from the Order Entered February 12, 2018
in the Court of Common Pleas of Clearfield County
Orphans' Court at No(s):  3438-2017
3439-2017

BEFORE:   BOWES, NICHOLS, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED SEPTEMBER 06, 2018**

K.R. (Mother) appeals from the order entered February 12, 2018, in the Court of Common Pleas of Clearfield County, which terminated involuntarily her parental rights to her minor sons, T.M.W., born in May 2010, and K.W., born in February 2013 (collectively, Children).[1]   After review, we vacate and remand for further proceedings consistent with this memorandum.

Mother has a lengthy history of involvement with Clearfield County Children, Youth and Family Services (the Agency) dating back to 2000. N.T., 1/5/2018, at 48.   The Agency became involved with Mother most

---

* Retired Senior Judge assigned to the Superior Court.

[1] The record does not reveal whether the orphans' court terminated the parental rights of M.W., Children's father.

recently due to truancy issues involving Children's older sister, N.H., and due to poor living conditions in the family's home. ***Id.*** at 58, 62. On February 10, 2016, Mother tested positive for amphetamines and methamphetamines. ***Id.*** She signed a voluntary placement agreement on February 11, 2016, and Children have remained in foster care since that time. ***Id.*** at 58-60. The juvenile court adjudicated Children dependent on March 9, 2016, and changed their permanent placement goals from reunification to adoption on August 19, 2016. ***Id.*** at 59-61.

On September 20, 2017, the Agency filed petitions to terminate Mother's parental rights to Children involuntarily. The orphans' court conducted a hearing on January 5, 2018, during which both Children were represented by legal counsel, Joshua S. Maines, Esquire, and a guardian *ad litem*, Daniel C. Bell, Esquire. Following the hearing, on February 12, 2018, the court entered an order terminating Mother's parental rights. Mother timely filed a notice of appeal on March 9, 2018, along with a concise statement of errors complained of on appeal.[2]

---

[2] Our review of the record indicates that Mother filed one notice of appeal from the order terminating her parental rights as to both Children. We point out that the correct procedure in this circumstance is to file separate notices of appeal for each child. ***See*** Pa.R.A.P. 341, Note ("Where … one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed."). In a recent case, our Supreme Court held that the failure to file separate notices of appeal from an order resolving issues on more than one docket "requires the appellate court to quash the appeal." ***Commonwealth v. Walker***, 185
*(Footnote Continued Next Page)*

- 2 -

Before reviewing the merits of the issue Mother wishes to raise on appeal, we must address *sua sponte* Children's right to legal counsel. "Appointment of counsel representing the child is mandatory, and failure to do so is legal error. This Court must raise the failure to appoint statutorily-required counsel for children *sua sponte*, as children are unable to raise the issue on their own behalf due to their minority." ***In re Adoption of T.M.L.M.***, 184 A.3d 585, 588 (Pa. Super. 2018) (citations omitted).

The Children's right to legal counsel derives from the Adoption Act, which requires the appointment of counsel in all contested involuntarily termination proceedings.

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian *ad litem* to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

Our Supreme Court has explained that the term "counsel" in 23 Pa.C.S. § 2313(a) refers to an attorney directed by the child who represents

---

*(Footnote Continued)* ———————————

A.3d 969, 977 (Pa. 2018). However, the Court clarified that it would apply its holding only "in future cases," because of decades of prior case law that seldom quashed appeals for that reason, and because the citation to case law contained in the note to Rule 341 was unclear. ***Id.*** Thus, because Mother filed her notice of appeal prior to the filing of our Supreme Court's decision in ***Walker*** on June 1, 2018, we do not quash her appeal.

- 3 -

the child's legal interests. ***In re Adoption of L.B.M.***, 161 A.3d 172, 180 (Pa. 2017). Critically, a child's legal interests are distinct from his or her best interests. ***Id.*** at 174. While a child's legal interests are synonymous with his or her preferred outcome, a child's best interests must be determined by the orphans' court. ***Id.***

We find instructive this Court's recent holding in ***T.M.L.M.***, which involved a child who was just under six years old at the time of the hearings to terminate his mother's parental rights. 184 A.3d at 590. In that case, the child's attorney did not attempt to interview him, nor did she set forth his preferred outcome on the record. ***Id.*** at 589-90. The attorney advocated solely for the child's best interests during the hearings, rather than his legal interests. ***Id.*** at 590. Finally, the attorney did not file a brief on appeal, nor did she join a brief filed by another party. ***Id.***

This Court concluded that the attorney's representation failed to comply with the requirements of 23 Pa.C.S. § 2313(a) and ***L.B.M.***, and vacated the order terminating the mother's parental rights. We explained our decision as follows.

> At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [the attorney's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be

- 4 -

unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, … it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.

***T.M.L.M.***, 184 A.3d at 590.

In this case, despite the appointment of Attorney Maines to represent Children, we have no basis to conclude that Children's statutory right to counsel was satisfied. ***See In re Adoption of M.D.Q.***, __ A.3d __, 2018 WL 3322744 at *5 (Pa. Super filed July 6, 2018) (vacating the termination order and remanding for an additional interview of the children because the record provided "no basis to conclude that [c]hildren were provided with counsel who represented their legal interests and took direction from [c]hildren to the extent possible due to their ages"). At the conclusion of the hearing, the court asked Attorney Maines for his position regarding the termination. Counsel provided the following response.

ATTORNEY MAINES: Your Honor, it's a difficult thing[,] difficult.

THE COURT: Sure it is. These kind of cases are gut-wrenching. They're extremely difficult.

ATTORNEY MAINES: I have to agree with [the GAL]. I believe that the [A]gency has met [its] burden, and I think it comes down to, with these kids, you know, just getting some finality for them, getting them to a point where they can have some permanency. Without a really good foreseeable time line, I just don't think it's realistic.

*Id.* at 171. While it is somewhat ambiguous, from counsel's statement it appears counsel may have misunderstood his role, and substituted his own judgment instead of advocating for Children's preferred outcomes. Thus, we turn to the record to determine whether there is any indication that Children received the benefit of client-directed, legal-interests counsel as required by subsection 2311(a).

Unfortunately, the record does not provide us with any information regarding Children's preferred outcomes. T.M.W. was seven and one-half years old at the time of the termination hearing, while K.W. was just under five years old. Thus, Children are old enough to have the potential to be form and articulate a preferred outcome. *See In re T.S.*, ___ A.3d ___, 2018 WL 4001825 at *7 (Pa. 2018) (distinguishing two- and three-year-old children whose young age rendered them unable to form "a subjective, articularable preference" from "children as young as five or six years of age [who have] opinions which are entitled to weight in legal proceedings concerning their custody") (citing Pa.R.P.C. 1.14, Explanatory Comment 1). Counsel did not indicate on the record that he interviewed Children in order to discern their preferred outcomes. He also did not set forth Children's preferred outcomes on the record, nor did he state that he was unable to determine their preferences. Counsel noted that Children were present at the courthouse in case the orphans' court wished to examine them, but

- 6 -

stated that, because of their ages, he did not "believe that an examination of them is needed here."[3]  N.T., 1/5/2018, at 125.

Compounding our inability to determine Children's legal interests is counsel's failure to file a brief advocating for those interests on appeal.  ***See T.M.L.M.***, 184 A.3d at 590 ("Counsel's duty to represent a child does not stop at the conclusion of the termination of parental rights hearing.").  This Court received a letter from counsel indicating that he would not be filing a brief, but counsel's letter provides no clarification as to what Children's preferred outcomes may have been.  Counsel's letter states only that "[counsel] would submit that the opinion of the [orphans' court] sufficiently sets forth adequate grounds for termination under 23 Pa.C.S. § 2511." Letter, 5/25/2018, at 1.

Further complicating this matter is the dearth of evidence in the record addressing Children's relationship with Mother.  The Adoption Act provides as follows, in relevant part.

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing,

---

[3] ***L.B.M.***, ***supra***, does not require an on-the-record examination of a child. However, the absence of an on-the-record examination is further indication that the record is not helpful in determining whether counsel's position was consistent with Children's preferred outcomes, and thus whether counsel understood he was to follow Children's directives instead of his own belief as to what was in Children's best interest.

furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

Before terminating parental rights pursuant to subsection 2511(b), our case law requires that the orphans' court consider whether the child has a bond with his or her parent, and what effect severing that bond may have on the child. *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011). If the record lacks the evidence necessary to conduct a proper bond analysis, a remand for an additional hearing is required. *See In re E.M.*, 620 A.2d 481 (Pa. 1993) (reversing and remanding "for a reevaluation of the needs and welfare of the children, taking into account whatever bonds may currently exist between the children and appellant, as well as other factors having bearing upon whether termination is proper"); *In re C.P.*, 901 A.2d 516, 523 (Pa. Super. 2006) ("[W]e are constrained to reverse and remand this matter to give the parties an opportunity to present further testimony regarding the emotional bonds between Mother and C.P., and the effect a termination of parental rights would have on C.P."). A conclusory analysis of the child's needs and welfare without reference to these issues is insufficient. *In re Adoption of A.C.H.*, 803 A.2d 224, 229-30 (Pa. Super. 2002).

In the instant matter, Mother testified that she was unable to visit with Children between April 2016 and February 2017 due to her incarceration.

N.T., 1/5/2018, at 141-44. When Mother began visiting with Children after her release, Agency caseworker, Crystal Vicklund, testified that she was "more of a friend to [C]hildren than a parent" because she coddled them and had a difficult time redirecting their negative behaviors. *Id.* at 67-68. Ms. Vicklund explained that Children's behaviors began to deteriorate considerably during the period that they were visiting with Mother.[4] *Id.* at 70. Children's Aid Society family support services manager, Christina Woodel, added that Mother did not interact with Children during visits unless they came to her first. *Id.* at 105. Other than this brief testimony, the record is silent as to Children's relationship with Mother.

Finally, our review of the opinion submitted by the orphans' court reveals that it failed to conduct an adequate analysis of subsection 2511(b). The court found that Mother's substance abuse issues, lack of stable housing, and poor parenting skills have prevented her from providing for Children's needs, and that Children's foster parents have provided for those needs in Mother's absence. Orphans' Court Opinion, 3/14/2018, at 11. However, the court's analysis featured no discussion of whether Children

---

[4] Ms. Vicklund testified that the Agency suspended Mother's visits upon the recommendation of T.M.W.'s therapist after a particularly upsetting visit in June 2017, during which Mother tested positive for the drug THC and got into an altercation with one of Children's older siblings because she purportedly referred to him as "fat." N.T., 1/5/2018, at 68-69, 80-81. Thus, it appears that Children had not seen Mother for approximately six months prior to the termination hearing, yet there was no evidence as to what sort of impact Mother's absence from their lives had upon Children.

have a bond with Mother, the nature of that bond, or the effect that severing that bond would have on Children.

In short, it appears Children's counsel may not have understood his role, resulting in a hearing where Children may not have received the benefit of client-directed counsel advocating for their legal interests. *M.D.Q.*, 2018 WL 3322744 at *5. Furthermore, the agency failed to set forth evidence bearing on all of the needs and welfare factors, resulting in an erroneous needs and welfare analysis by the orphans' court. *E.M.*, 620 A.2d at 485; *In re C.P.*, 901 A.2d at 523. Due to these issues, we vacate the order terminating Mother's parental rights and remand to the orphans' court for a new hearing.

On remand, counsel must interview Children and attempt to discern their preferred outcomes.[5] *M.D.Q.*, 2018 WL 3322744 at *5. Counsel must

---

[5] This Court has stated the following with regard to interviews of children by legal counsel.

> We recognize that ascertaining a child's position is a difficult task. It often entails undergoing a delicate conversation that needs to be undertaken with sensitivity and skill, and differs from an interview that an attorney would conduct of an adult. Nevertheless, our legislature has tasked legal-interests counsel with this job. *See L.B.M.*, 161 A.3d at 180 (holding, in a section joined by five Justices, that "when a child's relationship with his or her birth family could be severed permanently and against the wishes of the parents, the legislature made the policy judgment, as is evident from the plain, unambiguous language of the statute, that a lawyer who represents the child's legal interests, and who is directed by the child, is a necessity"). Accordingly, it

*(Footnote Continued Next Page)*

then notify the orphans' court of those preferences. If Children are unable or unwilling to provide preferred outcomes, counsel must inform the orphans' court of that as well. If for some reason Children's current counsel is unable or unwilling to undertake these obligations, the orphans' court must appoint new counsel. In addition, if counsel determines that Children have differing preferred outcomes, the orphans' court must appoint separate legal counsel for each child. Any attorney or attorneys appointed to represent Children's legal interests must advocate for those interests actively during all subsequent proceedings.

Once Children's legal interests are clear, the orphans' court must conduct a new hearing for two purposes: (1) so that Children may have the benefit of counsel as contemplated by 23 Pa.C.S. § 2313(a) and **L.B.M.**, and (2) so that the orphans' court may properly analyze Children's needs and welfare pursuant to subsection 2511(b) in accordance with **E.M.** and **C.P.**[6]

*(Footnote Continued)* ——————————

> is incumbent upon legal-interests counsel to do all that counsel can to create a relationship of trust between counsel and client, and then explain, commensurate with a child's level of development, the nature of the legal proceedings, followed by specific questions to ascertain the child's desired outcome and the direction the child wants counsel to take. We observe that Pa.R.P.C. 1.14 provides some guidance for representation of clients with diminished capacity.

**M.D.Q.,** 2018 WL 3322744 at *4 n.2.

[6] If, after ascertaining Children's legal interests, counsel determines that Children's legal interests are consistent with the result of the first hearing,
*(Footnote Continued Next Page)*

During the hearing, in addition to other evidence, the Agency must present evidence addressing whether Children have a bond with Mother, the nature of that bond, and what effect severing that bond may have on Children. *E.M.*, 620 A.2d at 485; *C.P.*, 901 A.2d at 523. The other parties may present evidence supporting or rebutting the Agency's evidence if they so choose. The orphans' court must then conduct a proper subsection 2511(b) analysis that includes all of the applicable considerations required by the statute and case law before granting or denying termination. *Id.*

Order vacated. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2018

*(Footnote Continued)* ————————

counsel must inform the orphans' court. In that instance, there is no need to conduct a new hearing as to grounds pursuant to subsection 2511(a), because Children's legal interests would have been represented adequately in the first hearing. *See T.M.L.M.*, 184 A.2d at 591 (holding the orphans' court "shall conduct a new hearing only if it serves the 'substantive purpose' of providing [the c]hild with an opportunity to advance his legal interests through his new counsel") (citing *In re N.A.G.*, 471 A.2d 871, 875 (Pa. Super. 1984)). However, in such event that a new hearing as to grounds is unnecessary, the orphans' court still must conduct a hearing to supplement the record regarding Children's needs and welfare in accordance with *E.M.* and *C.P.*