J-S20017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: L.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: J.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1882 MDA 2017 |

Appeal from the Decree Entered November 20, 2017
In the Court of Common Pleas of Lackawanna Orphans' Court at No(s):
A-31-2017.

| | | |
|---|---|---|
| IN RE: ADOPTION OF: B.L., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: J.L., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1883 MDA 2017 |

Appeal from the Decree Entered November 20, 2017
In the Court of Common Pleas of Lackawanna County Orphans' Court at
No(s):  A-30-2017.

BEFORE:  GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.:          **FILED DECEMBER 03, 2018**

In these consolidated matters, J.L. ("Father") appeals from the orders entered on November 20, 2017, in the Court of Common Pleas of Lackawanna County, involuntarily terminating his parental rights to two children, seven-year-old B.L. and her sister, two-year-old L.L.  Upon review, we vacate without

prejudice the orders terminating Father's rights and remand for further proceedings consistent with this memorandum.

The record reveals that the Lackawanna County Office of Youth and Family Services ("Agency" or "OYFS") first became involved with the family in 2014 after receiving referrals regarding "housing concerns, domestic violence, substance abuse and criminal activity." N.T., 11/16/17, at 10. At that time, the family only had one child, B.L., who was adjudicated dependent on December 29, 2014. *Id.*, at 11-12. She was placed in foster care on February 5, 2015, because her parents were incarcerated on drug charges. *Id.* at 10-11.

L.L. was born in August of 2015 with an addiction to heroin. *Id.* at 59. She was discharged from the hospital approximately two weeks after birth and immediately placed in the same foster home with B.L. *Id.*, at 13, 15. L.L. was adjudicated dependent on September 6, 2015. *Id.*, at 15. Both children have been involved with the same foster parents throughout this case, and those parents are a pre-adoptive resource. *Id.*, at 124.

Father was released from prison in November of 2015, and he was placed in a "sober house." *Id.*, at 13. The orphans' court explained Father was briefly reunited with the children until he was arrested and incarcerated again on drug charges:

> After Father's release from incarceration and stay in a sober house, OYFS worked with Father to return the children home, however[,] in April 2016, Father tested positive for cocaine and was incarcerated due to a probation violation in May 2016. OYFS again worked with Father[,] and he started

> the trial home visit in August 2016. The children were returned to Father's care in October 2016. Father was arrested in November 2016 for drug charges…. Father remain[ed] incarcerated [at the time of the termination hearing].

Trial Court Opinion, 12/21/17, at 1.[1]

The transcript of the termination hearing suggests that the children returned to Father's care on September 6, 2016, as opposed to October 2016. N.T., 11/16/17, at 27. In any event, Father's reunification lasted only a matter of weeks, until November 30, 2016, when he was arrested on new drug charges. *Id.* The children's mother, J.D. ("Mother"), died in February 2017. *Id.*, at 39, 68.

On June 5, 2017, the Agency filed petitions for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Following multiple continuances, a hearing on the petitions occurred on November 16, 2017. The children were represented during the hearing by guardian *ad litem* ("GAL"), Kevin O'Hara, Esquire. The Agency presented the testimony of its caseworkers, Sadie O'Day and Nikki Ganczarski, and both Attorney O'Hara and Father's counsel cross-examined

---

[1] The orphans' court filed separate opinions pursuant to Pa.R.A.P. 1925(a) with respect to the Children. Here, we reference the court's opinion with respect to L.L.

them. Father, who remained incarcerated, testified on his own behalf, and the Agency's counsel cross-examined him.[2]

By orders dated November 16, 2017, and entered on November 20, 2017, the orphans' court involuntarily terminated Father's parental rights. On December 6, 2017, Father timely filed notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated upon Father's request. The orphans' court filed separate opinions for each child pursuant to Rule 1925(a) on December 21, 2017.

Before addressing the merits of Father's appeal, we must raise *sua sponte* whether the Children were denied legal counsel during the involuntary termination proceeding pursuant to Section 2313(a) of the Adoption Act. **See In re Adoption of T.M.L.M.**, 184 A.3d 585, 587-588 (Pa. Super. April 13, 2018) ("This Court must raise the failure to appoint statutorily required counsel for children *sua sponte*, as children are unable to raise the issue on their own behalf due to their minority.") (citing **In re K.J.H.**, 180 A.3d 411, 414 (Pa. Super. 2017)); **see also In re T.S.,** ---A.3d---, 50 & 51 WAP 2017, 2018 WL 4001825 (Pa. August 22, 2018).

_____

[2] The record reveals that Father's most recent criminal charges remained pending at the time of the involuntary termination proceeding. N.T., 11/16/17, at 4-5, 56.

- 4 -

It is undisputed that the appointment of counsel to represent a child in a contested termination proceeding is mandatory pursuant to Section 2313(a) of the Adoption Act, which provides as follows.

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S.A. § 2313(a).

The term "counsel" in Section 2313(a) refers to an attorney representing the child's "legal interests," which our Supreme Court defined as the "child's preferred outcome" of the termination proceedings, as opposed to the child's best interests, which the trial court must determine. ***In re Adoption of L.B.M.***, 161 A.3d 172, 174 (Pa. 2017).

In Section I of ***L.B.M.***, a section joined by five justices, the Court held that orphans' courts must appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding pursuant to 23 Pa.C.S.A. § 2313(a). ***Id.***, at 180. Importantly, the Justices disagreed on whether the role of counsel may be filled by a GAL who also represents a child's best interests. A majority of the Justices opined in a series of concurring and dissenting opinions that a child's dependency GAL may serve as counsel so long as the GAL's dual role does not create a conflict of interest. ***Id.***, at 183-93; ***see also In re D.L.B.,*** 166 A.3d 322 (Pa. Super. 2017). In

- 5 -

*In re T.S., infra*, the Supreme Court clarified *L.B.M.*'s fractured stance and reaffirmed that, "where a child is too young to express a preference, it would be appropriate for the GAL to represent the child's best interests **and** legal interests simultaneously." *In re T.S.,* ---A.3d---, 50 & 51 WAP 2017, 2018 WL 4001825, at *6 (Pa. August 22, 2018).

The question now becomes how young is too young. It is a question this Court has grappled with since *L.B.M.* was decided, but with *T.S.*, our Supreme Court brings the line of demarcation into focus:

> As illustrated by the present dispute [involving a two-year-old and three-year-old]…if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed "to represent the child," 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings.

*T.S.*, at *10.

In this case, the orphans' court did not enter an order appointing counsel to represent the Children in the contested termination of parental rights proceedings pursuant to Section 2313(a). Rather, Attorney O'Hara, who served as the Children's GAL in the underlying dependency proceedings, represented them in the termination hearing. During the termination hearing, Attorney O'Hara did not identify himself as either GAL or counsel for the Children. Neither the orphans' court nor the parties sought to clarify the capacity of Attorney O'Hara's representation during the hearing. In his closing

statement to the orphans' court at the conclusion of the hearing, Attorney O'Hara supported the termination of Father's parental rights based on the Children's **best interests**.  N.T., 11/16/17, at 112-113 (emphasis added). Moreover, Attorney O'Hara neither indicated the Children's preferred outcome of the termination proceedings nor identified a potential conflict between their legal and best interests.  Likewise, the court failed to identify whether a potential conflict existed between the Children's legal and best interests.  We observe that at the time of the termination hearing, B.L. was seven years old and L.L. was two years old.

With regard to B.L., we vacate the order without prejudice and remand for the orphans' court to determine if a conflict of interest exists between B.L.'s legal and best interests.  If the court determines that her legal interest is different from her best interest, then the court shall appoint counsel for B.L. pursuant to Section 2313(a) and conduct a new termination hearing.  The orphans' court shall conduct a new hearing only if it serves the "substantive purpose" of providing B.L. with an opportunity to advance her legal interests through her new counsel.  **See In re Adoption of N.A.G.**, 471 A.2d 871 (Pa. Super. 1984).[3]

---

[3] In **N.A.G.**, the children were unrepresented until after the hearings, when the orphans' court realized its mistake and belatedly appointed counsel for the children. Father appealed from the order terminating his rights, arguing, *inter alia*, that this Court should vacate the decree and remand for a new hearing wherein the children would have representation. This Court made clear that the failure to appoint counsel prior to the hearings was "contrary to the

We recognize that L.L. was only two years old at the time of the termination proceedings and likely unable to express her preference in this matter. However, because a remand is required for B.L., L.L.'s case must also be remanded.

Presumably, when the orphans' court conducted its best interest analysis pursuant to 23 Pa.C.S.A. § 2511(b), the court anticipated that the children would be adopted together. Our decision regarding B.L. necessarily calls into question that eventuality. Meanwhile, L.L. has aged while the appeal has been pending. And so the orphans' court now must similarly ascertain whether L.L.'s legal interests diverge from her best interests.

If the orphans' court determines that neither Child's case presents a conflict, the court may re-enter its original termination order. But if either Child's case presents a conflict, the court must conduct a new termination hearing for both.

_____

statute's procedural mandate." *Id.* at 874. However, because the children's belatedly appointed counsel confirmed that the children did not wish to alter the termination decree and did not request a new hearing so that counsel could actively participate on their behalf, this Court held that the failure to appoint counsel prior to the hearing was harmless error. *Id.* at 874–75. The Court reasoned that the purpose of subsection 2313(a) is to guarantee the child an advocate who owes his or her loyalty exclusively to the child, as opposed to benefitting or creating rights in a contesting parent. *Id.* at 874. Thus, the Court declined to remand for a new hearing where a hearing would not serve a "substantive purpose." *Id.* at 875.

Orders vacated without prejudice. Cases remanded for the determination of whether conflicts exist between the Children's legal and best interests. Jurisdiction relinquished.

Judge Ott joins the Memorandum.

President Judge Gantman notes Dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/03/2018