J-S65015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: Q.R.D., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: N.J.D., NATURAL | : | |
| FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1060 MDA 2018 |

Appeal from the Decree Entered June 8, 2018
In the Court of Common Pleas of Schuylkill County Orphans' Court at
No(s):  A63-245A-17

BEFORE:  SHOGAN, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY SHOGAN, J.:                **FILED DECEMBER 24, 2018**

Appellant, N.J.D., biological father ("Father") to Q.R.D. ("Child"), appeals from the decree entered June 8, 2018, terminating his parental rights to Child.  After careful consideration, we vacate and remand.

Child was born in August of 2013 to K.D. ("Mother") and Father.  N.T., 5/17/18, at 35.  Mother and Father were unmarried at the time of Child's birth and lived together until approximately December of 2013, when they separated.  *Id.* at 36, 54.  The parties subsequently entered into a custody agreement in the Carbon County Court of Common Pleas in April of 2014.  *Id.* at 37-38.  The custody order provided Mother with primary custody of Child and partial custody to Father.  *Id.* at 38-39.  When Mother subsequently refused to follow the custody order, Father filed a petition for contempt with

the Carbon County Court of Common Pleas, and Mother was found to be in contempt. *Id.* at 54-55, 67, 73.

A second custody order was entered in June of 2014, which continued to give Mother primary custody and Father partial custody. N.T., 5/17/18, at 40. In July of 2015, while Child was in Father's custody, Child suffered burn marks. *Id.* at 14, 42-43. The matter was referred to Children and Youth Services, but it was determined there was no need for services. *Id.* at 42, 53-54. Thereafter, Mother would not allow Father to have custody of Child outside of Mother's home. *Id.* at 39. Although Father had successfully filed a contempt action against Mother in May of 2014, he chose not to seek another contempt finding. *Id.* at 55, 118. From July of 2015 until May of 2016, Father's visits with Child were sporadic.[1] *Id.* at 43, 76-80. Father saw Child on May 5, 2016, the day Father exited rehabilitation services, during a chance-encounter at a local supermarket[2] and later that day. *Id.* at 44, 56, 81.

There was also evidence provided that Father attempted to see Child on Child's birthday in August of 2016. N.T., 5/17/18, at 12, 45, 57, 83-84. Father testified that Mother agreed to allow Father to see Child on that date and Father waited at Mother's home until Child and Mother returned. *Id.* at

_____

[1] Father testified that during this period, he spent seventy-five days in rehabilitation for treatment of depression and drug use. *Id.* at 79-81.

[2] Father testified to seeing Child in the local supermarket earlier in the day, N.T., 5/17/18, at 80-81, but Mother did not recall that interaction. *Id.* at 56-57.

83-84. Mother, however, testified that Father advised her that he was going to Mother's house on that date, and she told him they were not home but that he could wait until Mother and Child returned home. *Id.* at 45. While waiting, Father stated that Mother's Father, A.H. ("Maternal Grandfather"), who lives with Mother, Child, and B.M.D. ("Stepfather"),[3] started an argument with him, so he left before seeing Child. *Id.* at 12. Father left birthday presents for Child. *Id.* at 12, 16, 45.

Father maintains that he attempted to contact Mother and Maternal Grandfather after August of 2016 in an effort to see Child. N.T., 5/17/18, at 84. Father stated that his calls to Mother would "not go through," and he speculated that Mother blocked his number or changed her number.[4] *Id.* at 85, 87-88. Father contends that neither Mother nor Maternal Grandfather returned his messages. *Id.* at 85-86.

In November or December of 2016, Father maintains that he advised Maternal Grandfather that he planned to move to Philadelphia, where he had accepted a job. N.T., 5/17/18, at 85-86. Father asserts that neither Mother nor Maternal Grandfather responded. *Id.* at 85-87. Father remained in

---

[3] Stepfather is married to Mother and at the time of the hearing had lived with Mother and Child for three years. N.T., 5/17/18, at 22.

[4] Despite Father's conjecture that Mother had changed her phone number, at trial evidence was presented reflecting that Mother's number had not changed since 2014. *Id.* at 5, 23-24, 44, 46-47.

Philadelphia until September of 2017, when he moved back to Schuylkill County because Mother and Stepfather had begun the process to terminate Father's parental rights to Child. *Id.* at 87-89. Father acknowledged that he had not seen Child since May 5, 2016. *Id.* at 110-111, 116. Despite Mother's efforts to keep Child from Father, Father has not filed any proceedings against Mother since the contempt action in 2014. *Id.* at 118.

Stepfather filed a petition to involuntarily terminate Father's parental rights on November 21, 2017.[5] A hearing on the petition was held on May 17, 2018. On June 8, 2018, the orphans' court issued an opinion and final decree granting Stepfather's petition to terminate Father's parental rights to Child. On June 27, 2018, Father filed a notice of appeal and a concise statement of errors.

Before we reach the issues presented by Father on appeal, we address *sua sponte* whether Attorney Constance A. Calabrese's representation of Child

---

[5] Pursuant to 23 Pa.C.S. § 2512(a)(3), a petition to terminate parental rights with respect to a child under the age of eighteen years may be filed by "[t]he individual having custody or standing *in loco parentis* to the child and who has filed a report of intention to adopt required by section 2531 (relating to report of intention to adopt)." In this case, Stepfather has stood *in loco parentis* to Child, and he also filed a report of intention to adopt pursuant to Section 2531. Petition for Adoption, 11/21/17, at 1. Thus, Stepfather had standing to file the petition at issue.

satisfied the requirements of 23 Pa.C.S. § 2313(a).[6]  Child has a clear

statutory right to counsel in contested involuntary termination proceedings:

> The court shall appoint counsel to represent the child in an
> involuntary termination proceeding when the proceeding is being
> contested by one or both of the parents.  The court may appoint
> counsel or a guardian ad litem to represent any child who has not
> reached the age of 18 years and is subject to any other proceeding
> under this part whenever it is in the best interests of the child.  No
> attorney or law firm shall represent both the child and the
> adopting parent or parents.

23 Pa.C.S. § 2313(a).

The term "counsel" in 23 Pa.C.S. § 2313(a) refers to an attorney

representing the child's legal interests who is directed by the child.  *In re*

*Adoption of L.B.M.*, 161 A.3d 172, 180 (Pa. 2017).  As our Supreme Court

has emphasized, a child's legal interests are distinct from his or her best

interests.  *Id.* at 174.  A child's legal interests are synonymous with his or her

preferred outcome, while a child's best interests must be determined by the

trial court.  *Id*.

Recently, in *T.S.*, 192 A.3d 1080 (Pa. 2018), our Supreme Court clarified

a child's statutory right to the appointment of legal counsel.  That decision

examined *L.B.M.* and reiterated that children have a clear statutory right to

mandatory appointment of counsel to represent their legal interests in

contested termination of parental rights proceedings.  *In re T.S.*, 192 A.3d at

---

[6] This Court must raise the failure to appoint statutorily-required counsel for
children *sua sponte*, as children are unable to raise the issue on their own
behalf due to their minority.  *In re K.J.H.*, 180 A.3d 411 (Pa. Super. 2018).

1082. However, the *T.S.* Court also held that, "where a child's legal and best interests do not diverge in a termination proceeding, an attorney-[guardian ad litem ("GAL")] representing the child's best interests can also fulfill the role of the attorney appointed . . . to represent the child's legal interests." *In re T.S.*, 192 A.3d at 1088. The *T.S.* Court also noted that the majority view in *L.B.M.* "indicated that, where a child is too young to express a preference, it would be appropriate for the GAL to represent the child's best and legal interests simultaneously." *Id.* The *T.S.* Court ultimately concluded that when a child is too young or non-verbal, the child's wishes cannot be ascertained, and therefore there is no duty to advise the court. *See Id.* at 1090 ("As a matter of sound logic, there can be no conflict between an attorney's duty to advance a subjective preference on the child's part which is incapable of ascertainment, and an attorney's concurrent obligation to advocate for the child's best interests as she understands them to be."). Ultimately, the *T.S.* Court reaffirmed:

> certain principles agreed upon by a majority of Justices in *L.B.M.*, namely, that during contested termination-of-parental-rights proceedings, where there is no conflict between a child's legal and best interests, an attorney-guardian *ad litem* representing the child's best interests can also represent the child's legal interests. As illustrated by the present dispute, moreover, if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act that counsel be appointed "to represent the child," 23 Pa.C.S. § 2313(a), is satisfied where the court has appointed an attorney-guardian *ad litem* who represents the child's best interests during such proceedings.

***In re T.S.***, 192 A.3d at 1092-1093.

Finally, in ***In re Adoption of T.M.L.M.***, 184 A.3d 585 (Pa. Super. 2018), this Court examined the requirements necessary for counsel to provide adequate representation of a child's legal interests as follows:

> At the time of the hearings, [T.M.L.M.] was just shy of six years old. While [T.M.L.M.] may not have been old enough to participate actively in [court appointed counsel's] representation of him, it is not unlikely that [T.M.L.M.] has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that [T.M.L.M.'s] preferred outcome in this case is synonymous with his best interests. It may be that [T.M.L.M.] wants no contact with Mother. [T.M.L.M.] may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if [T.M.L.M.] prefers a different outcome.

***Id.***, at 590. Indeed, as noted by our Supreme Court in ***T.S.***, "Pennsylvania's Rules of Professional Conduct refer to children as young as five or six year of age… having opinions which are entitled to weight in legal proceedings concerning their custody." ***In re T.S.***, 192 A.3d at 1089, n.17 (internal quotation marks and citation omitted).

Here, the certified record reflects the following. The orphans' court appointed Attorney Calabrese as "counsel" for Child on January 19, 2018. Order, 1/19/18, at 1. In a letter to the court, Attorney Calabrese thanked the court for appointing her as "counsel" for Child in this matter. Letter, 2/1/18, at 1. We are unable to locate any order in the certified record appointing her

as a GAL. Nonetheless, Attorney Calabrese was identified as GAL for Child at the hearing on the involuntary termination of parental rights petition filed by Stepfather. N.T., 5/17/18, at 1. At the hearing, her cross-examination of the witnesses was directed toward the best interests of Child. *Id.* at 1-128. However, we are unable to locate in the record any indication of Child's preferred outcome or that Attorney Calabrese was unable to ascertain Child's preferred outcome due to Child's age, development, or other reason.[7]

Compounding matters is the fact that Attorney Calabrese's appointment was vacated on August 1, 2018, after this matter was on appeal, and the orphans' court appointed Attorney Shelby G. Hostetter as "counsel" for Child. Order, 8/1/18, at 1. In a letter entered September 11, 2018, Attorney Hostetter indicated that she had been appointed as GAL to Child in the matter pursuant to the August, 2018 order of court, but did not serve as GAL in the orphans' court proceedings. Letter, 9/11/18, at 1. Attorney Hostetter advised that she would be relying on the orphans' court opinion and corresponding order issued June 8, 2018, and "[a]s such, I have no alternative or inconsistent precedent to provide and will not be submitting a brief." *Id.*

---

[7] We note that the parties in *T.S.* agreed, due to the children's very young age (two and three years old), that they "cannot have formed a subjective, articulable preference to be advanced by counsel during the termination proceedings," and that our Supreme Court found this to be entirely consistent with the record. *In re T.S.*, 192 A.3d at 1089. There is no indication of such an agreement between the parties in the record before us in this case, and Child was four and one-half years old at the time of the hearing.

Based upon our review of the record, we have no basis upon which to conclude that Attorney Calabrese effectively represented Child's legal interests in this matter. Like one of the children in **L.B.M.**, Child was four years old at the time of the termination hearing. Although Child had a previous relationship with Father, the record does not reflect whether he was interviewed regarding his preference, whether he had a preference, or whether his preference could be ascertained.

While we do not wish to prolong the uncertainty of Child's future, we are constrained to vacate the order terminating Father's parental rights and remand for proceedings consistent with this memorandum. Upon remand, the orphans' court shall determine whether a conflict existed between Child's best interests and legal interests, if ascertainable. If Child's best and legal interests are found not to conflict, or if his legal interests are found to be unascertainable, the orphans' court may re-enter its original order. However, if a conflict is found to exist, the court shall reappoint legal counsel for the child, as well as a separate GAL, and conduct a new hearing in order to serve the substantive purpose of providing Child with an opportunity to advance his legal interests through his new counsel. **In re adoption of N.A.G.**, 471 A.2d 871, 875 (Pa. Super. 1984).

Decree vacated without prejudice to permit the orphans' court to re-enter the original order if a new hearing is not held. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/24/2018