J-S30045-18

2018 PA Super 199

| IN RE: ADOPTION OF: M.D.Q. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.M.-Q., BIOLOGICAL MOTHER | : | |
| | : | No. 242 WDA 2018 |

Appeal from the Order Entered January 16, 2018
in the Court of Common Pleas of Clearfield County Orphans' Court at
No(s): O.C. No. 3412-2017

| IN RE: ADOPTION OF: M.C.Q. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.M-Q., BIOLOGICAL MOTHER | : | |
| | : | No. 243 WDA 2018 |

Appeal from the Order January 16, 2018
in the Court of Common Pleas of Clearfield County Orphans' Court at
No(s): 3412-2017

BEFORE: BENDER, P.J.E., STABILE, J., and STRASSBURGER*, J.

OPINION BY STRASSBURGER, J.:                    FILED JULY 06, 2018

In these consolidated appeals, A.M.-Q. (Mother) appeals from the order
entered January 16, 2018, granting the petition filed by C.Q. (Father) and
A.Q. (Stepmother) (collectively, Petitioners), and terminating her parental
rights involuntarily to her minor children, M.C.Q., born in June 2009, and
M.D.Q., born in April 2011 (collectively, Children). After review, we vacate

_____

* Retired Senior Judge assigned to the Superior Court.

the order without prejudice and remand for further proceedings consistent with this opinion.

Mother and Father were once married. N.T., 11/3/2017, at 28-29. Following their separation and divorce, Father exercised primary physical custody of Children, while Mother exercised partial physical custody. Id. at 21-22. The parties shared legal custody of Children. Id. at 21. Mother last saw the Children during a visit in September 2016. Id. at 5-6, 8, 21, 33. Mother was incarcerated later that month for reasons not specified in the record. Id. at 5, 8-9, 24. She was released to a halfway house in April 2017, but absconded in May 2017. Id. at 24, 34-37. Mother had no contact with Children while incarcerated or following her release. Id. at 5-6, 11-12, 14.

Father began dating Stepmother in approximately 2014, and they married in 2016. Id. at 3-4, 11. Petitioners reside together with Children, two of Stepmother's children from a previous relationship, and with their own biological child. Id. at 4, 9, 12-13. On May 1, 2017, after seven months of no contact from Mother, Petitioners filed petitions to terminate her parental rights involuntarily.

The orphans' court conducted a termination hearing on November 3, 2017. During the hearing, Petitioners and Mother appeared, represented by counsel. The court also appointed Courtney L. Kubista, Esquire, to represent

Children.[1]  At the conclusion of the hearing, the court directed the parties to submit letter briefs arguing their respective positions.  Thereafter, on January 16, 2018, the court entered the order complained of on appeal, in which it terminated Mother's parental rights to Children involuntarily.  Mother timely filed notices of appeal on February 14, 2018, along with concise statements of errors complained of on appeal.

Before addressing the merits of Mother's appeal, we must consider sua sponte whether Children's counsel provided adequate representation of their legal interests during this proceeding.

> Appointment of counsel representing the child is mandatory, and failure to do so is legal error. In re Adoption of G.K.T., 75 A.3d 521, 526 (Pa. Super. 2013) (citing In re E.F.H., 751 A.2d 1186, 1189–90 (Pa. Super. 2000)). See also In re Adoption of N.A.G., [471 A.2d 871 (Pa. Super. 1984)] (holding 23 Pa.C.S. § 2313(a) creates a statutory right for a child to have counsel appointed who actively advances his or her needs and welfare and owes loyalty exclusively to him or her). This Court must raise the failure to appoint statutorily-required counsel for children sua sponte, as children are unable to raise the issue on their own behalf due to their minority. In re K.J.H., [180 A.3d 411 (Pa. Super. 2018)].

In re Adoption of T.M.L.M., ___ A.3d _____, 2018 WL 1771194, at *2 (Pa. Super. 2018).

_____

[1] The order appointing Attorney Kubista specified that she would serve as "Attorney for the Children."  Thus, this is not a case where Children were represented by a guardian ad litem tasked with representing their non-conflicting legal and best interests.  See In Re D.L.B., 166 A.3d 322, 329 (Pa. Super. 2017).

The Adoption Act provides that children have the right to representation by counsel in all contested involuntary termination proceedings. The Act provides as follows, in relevant part.

> (a) Child.--The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

The term "counsel" in 23 Pa.C.S. § 2313(a) refers to an attorney representing the child's legal interests who is directed by the child. In re Adoption of L.B.M., 161 A.3d 172, 180 (Pa. 2017). As our Supreme Court has emphasized, a child's legal interests are distinct from his or her best interests. Id. at 174. A child's legal interests are synonymous with his or her preferred outcome, while a child's best interests must be determined by the trial court. Id.

This Court clarified the requirements that counsel must meet in order to provide adequate representation of a child's legal interests in T.M.L.M., supra. In that case, the child was just under six years old at the time of the hearings to terminate his mother's parental rights. T.M.L.M., 2018 WL 1771194, at *4. However, the attorney appointed to represent the child did not attempt to interview him and did not set forth his preferred outcome on the record.

Id. at *3-4. The child's attorney did not advocate for his legal interests during the hearings, and instead focused solely on his best interests. Id. Moreover, she did not file a brief in this Court, nor did she join a brief filed by another party. Id. at *4.

This Court concluded that the child had been deprived of his statutory right to counsel. We reasoned as follows:

> At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [the attorney's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, … it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.

Id. at *4 (citation omitted).

In this case, Attorney Kubista represented Children during the termination hearing on November 3, 2017. Children's counsel participated in the hearing by cross-examining witnesses. However, counsel made no mention of Children's preferred outcomes on the record, and presented no argument or statement on their behalf.

Following the hearing, the orphans' court directed the parties to submit letter briefs arguing their respective positions. Counsel's brief is not contained in the certified record. Apparently, though, counsel stated in her brief that she interviewed Children, and summarized the contents of their conversations for the court. The court described counsel's letter brief as follows.

> In her brief, [c]ounsel for [] Children stated that she spoke with [] Children to discuss their positions on the termination. It is clear from [c]ounsel's summary of the conversations that [] Children both see their Stepmother as fulfilling the motherly role in their lives. [] Children did not seem as concerned with discussing their Mother, whom they acknowledged they had not seen in some time. It appears to th[e c]ourt that [] Children's needs are being sufficiently met by Father and Stepmother, and that termination of Mother's rights would have no great impact on [] Children at this time or in the future, as they seem to share no emotional bond. Alternatively, allowing Mother to continue to enter and exit [] Children's lives on her whim is likely to confuse and detrimentally impact [] Children's emotional needs. . . .

Orphans' Court Opinion, 1/16/2018, at 4.

Based upon the orphans' court's summary, we are unable to ascertain whether counsel represented Children's legal interests. While counsel may have interviewed Children and spoken to them about Mother, it does not appear that she asked, or attempted to ask, what Children's preferred outcomes were. It may be that Children were not able or willing to state a preferred outcome, but there is no indication of that in the court's description either.

Counsel also filed a brief in this Court supporting the termination of Mother's parental rights, but counsel's brief does not provide any further

clarification of Children's legal interests. In her brief, Attorney Kubista makes no mention of any preferred outcomes that Children may have. Counsel states as follows, in relevant part.

> I have interviewed [C]hildren. After reviewing this case thoroughly, I believe that due to Mother's lack of contact, failure to file any Petitions with the [orphans' c]ourt to obtain contact with [C]hildren and failure to perform any parental duties, the [orphans' c]ourt properly terminated the rights of Mother which was in the best interests of [C]hildren.
>
> * * *
>
> I questioned [C]hildren in regard to the relationship with their Mother. It was clear that [C]hildren have no relationship with Mother. [C]hildren stated that it has been awhile since they had contact with their Mother. When confronted with questions as to their everyday care, the only people [C]hildren included in the conversations were their Father and Step-Mother. It was evident that they had a great relationship with their Step-Mother and they were grateful that Step-Mother had taken the role of a parent in their Mother's absence.
>
> * * *
>
> Based upon my interviews with [C]hildren and the testimony presented at the hearing, the [orphans' c]ourt weighed the testimony and evidence and properly determined that the termination was warranted in this matter in regard to the best interests of [C]hildren.

Counsel's Brief at 4-5, 13-15. Again, based on counsel's statements, it appears that counsel did not ask Children what outcomes they each preferred, and instead speculated what outcome Children wanted.

Finally, we cannot determine Children's legal interests from any other sources in the certified record. To the extent the record does shed light on Children's legal interests, it suggests that a conflict may have existed between

counsel's support of the termination petition and M.D.Q.'s preferred outcome. During the termination hearing, Stepmother testified that her relationship with M.D.Q. has deteriorated since M.D.Q. saw Mother at a recent court proceeding, and that M.D.Q. has made statements "[t]hat I'm not her real mom now and stuff like that." N.T., 11/3/2017, at 15, 19.

Based on the foregoing, we have no basis to conclude that Children were provided with counsel who represented their legal interests and took direction from Children to the extent possible due to their ages. At the time of the termination hearing, M.C.Q. was just under eight and a half years old, while M.D.Q. was six and a half years old. Children were old enough to provide at least some input as to their preferred outcomes in this case.[2] However, neither the court's description of counsel's letter brief, nor counsel's brief on

_____

[2] We recognize that ascertaining a child's position is a difficult task. It often entails undergoing a delicate conversation that needs to be undertaken with sensitivity and skill, and differs from an interview that an attorney would conduct of an adult. Nevertheless, our legislature has tasked legal-interests counsel with this job. See L.B.M., 161 A.3d at 180 (holding, in a section joined by five Justices, that "when a child's relationship with his or her birth family could be severed permanently and against the wishes of the parents, the legislature made the policy judgment, as is evident from the plain, unambiguous language of the statute, that a lawyer who represents the child's legal interests, and who is directed by the child, is a necessity"). Accordingly, it is incumbent upon legal-interests counsel to do all that counsel can to create a relationship of trust between counsel and client, and then explain, commensurate with a child's level of development, the nature of the legal proceedings, followed by specific questions to ascertain the child's desired outcome and the direction the child wants counsel to take. We observe that Pa.R.P.C. 1.14 provides some guidance for representation of clients with diminished capacity.

appeal indicates that counsel attempted to ascertain these preferences directly. Counsel's statements in her brief suggest that her focus was on advocating for what she believed Children wanted rather than following Children's direction and advocating for the outcome they preferred. Moreover, what little indication exists in the record addressing Children's legal interests suggests that there may have been a conflict between counsel's stated position and M.D.Q.'s preferred outcome.

Because of these deficiencies, we must vacate the order terminating Mother's parental rights involuntarily, and remand for counsel to conduct an additional interview of Children to discern their legal interests directly. Once Attorney Kubista has done so, she must notify the orphans' court. If Children's express preferred outcomes are consistent with the result of the prior proceeding, or if Children are unable or unwilling to articulate a clear preferred outcome, the court may reenter its January 16, 2018 order. If the Children's preferred outcomes are inconsistent with the result of the prior proceeding, the court must conduct a new termination hearing, with counsel actively advocating for their legal interests. See T.M.L.M., 2018 WL 1771194 at *4 (providing that the orphans' court shall conduct a new hearing if it serves the

substantive purpose of providing the child with an opportunity to advance his legal interests through legal-interests counsel).[3]

Order vacated without prejudice to permit the orphans' court to reenter the original order if a new hearing is not held. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.

---

[3] We are cognizant that in T.M.L.M., this Court remanded the case with the direction that new legal counsel be appointed. In the instant case, it appears counsel attempted to comply with L.B.M., but either did not understand the precise nature of her obligation, or she did understand but failed to make clear on the record and in her brief what Children's legal interests are. Unlike in T.M.L.M, counsel did not abandon Children, and therefore, we see no need at this time to instruct the orphans' court to appoint new counsel on remand. See T.M.L.M., 2018 WL 1771194 at *4 (finding that counsel "freely admitted that she did not even attempt to interview" the child, "directly admitted that her 'only concern' was" child's best interest and failed to file a brief or "indicate to this Court that she would not be filing a brief and did not attend oral argument.").

In the interest of continuity of Children's representation, we remand this case so that counsel may discern Children's legal interests. Counsel must advocate for Children's legal interests regardless of whether she believes termination is in Children's best interests. See L.B.M., 161 A.3d at 174, n.8 ("'Legal interests' denotes that an attorney is to express the child's wishes to the court regardless of whether the attorney agrees with the child's recommendation. 'Best interests' denotes that a guardian ad litem is to express what the guardian ad litem believes is best for the child's care, protection, safety, and wholesome physical and mental development regardless of whether the child agrees.") (citing Pa.R.J.C.P. 1154 cmt). If it appears to the orphans' court that counsel is unable or unwilling to undertake this obligation, new counsel should be appointed. Moreover, we observe that Children may have conflicting preferred outcomes, in which case counsel should inform the court, and the court must appoint separate counsel for each child.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/6/2018