J-S27043-19

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.C.Q. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.M-Q., BIOLOGICAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 276 WDA 2019 |

Appeal from the Order Entered January 16, 2019
In the Court of Common Pleas of Clearfield County Orphans' Court at
No(s): O.C. No. 3413-2017

| | | |
|---|---|---|
| IN RE: ADOPTION OF: M.D.Q. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: A.M.-Q., BIOLOGICAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 277 WDA 2019 |

Appeal from the Order Entered January 16, 2019
In the Court of Common Pleas of Clearfield County Orphans' Court at
No(s): 3412-2017

BEFORE: OLSON, J., OTT, J., and COLINS*, J.

MEMORANDUM BY COLINS, J.: FILED MAY 22, 2019

In these consolidated appeals, Appellant, A.M.-Q. ("Mother"), appeals

from the orders entered January 16, 2019, that terminated her parental rights

to her children, M.D.Q., born 2011, and M.C.Q., born 2009 (collectively,

"Children"). We affirm.

_____

* Retired Senior Judge assigned to the Superior Court.

The factual and procedural history of this action was previously summarized by this Court as follows:

> Mother and [C.Q. ("Father")] were once married. Following their separation and divorce, Father exercised primary physical custody of Children, while Mother exercised partial physical custody. The parties shared legal custody of Children. Mother last saw the Children during a visit in September 2016. Mother was incarcerated later that month for reasons not specified in the record. She was released to a halfway house in April 2017, but absconded in May 2017. Mother had no contact with Children while incarcerated or following her release.
>
> Father began dating [A.Q. ("Stepmother")] in approximately 2014, and they married in 2016. [Father and Stepmother (collectively, "Petitioners")] reside together with Children, two of Stepmother's children from a previous relationship, and with their own biological child. On May 1, 2017, after seven months of no contact from Mother, Petitioners filed petitions to terminate her parental rights involuntarily.
>
> The orphans' court conducted a termination hearing on November 3, 2017. During the hearing, Petitioners and Mother appeared, represented by counsel. The court also appointed Courtney L. Kubista, Esquire, to represent Children.[1] At the conclusion of the hearing, the court directed the parties to submit letter briefs arguing their respective positions. Thereafter, on January 16, 2018, the court entered the order complained of on appeal, in which it terminated Mother's parental rights to Children involuntarily. Mother timely filed notices of appeal on February 14, 2018, along with concise statements of errors complained of on appeal.
>
>> [1] The order appointing Attorney Kubista specified that she would serve as "Attorney for the Children." Thus, this is not a case where Children were represented by a guardian ad litem tasked with representing their non-conflicting legal and best interests.

In re Adoption of M.D.Q., 192 A.3d 1201, 1202-03 (Pa. Super. 2018) (citations to the record omitted).

- 2 -

On July 6, 2018, this Court vacated the termination orders without prejudice and remanded for further proceedings. Id. at 1202. Before addressing the merits of Mother's appeal, this Court raised an issue sua sponte as to "whether Children's counsel provided adequate representation of their legal interests during this proceeding." Id. at 1203. This Court explained:

> The [Adoption] Act provides as follows . . .
>
>> The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents. The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child. No attorney or law firm shall represent both the child and the adopting parent or parents.
>
> 23 Pa.C.S. § 2313(a).
>
> The term "counsel" in 23 Pa.C.S. § 2313(a) refers to an attorney representing the child's legal interests who is directed by the child. . . . [A] child's legal interests are distinct from his or her best interests. A child's legal interests are synonymous with his or her preferred outcome, while a child's best interests must be determined by the trial court. . . .
>
> In [In re Adoption of T.M.L.M., 184 A.3d 585, 590-91 (Pa. Super. 2018)], the child was just under six years old at the time of the hearings to terminate his mother's parental rights. However, the attorney appointed to represent the child did not attempt to interview him and did not set forth his preferred outcome on the record. Id. at 589–91. The child's attorney did not advocate for his legal interests during the hearings, and instead focused solely on his best interests. Id. Moreover, she did not file a brief in this Court, nor did she join a brief filed by another party. Id. at 590-91.
>
> This Court concluded that the child had been deprived of his statutory right to counsel. We reasoned as follows:

At the time of the hearings, Child was just shy of six years old. While Child may not have been old enough to participate actively in [the attorney's] representation of him, it is not unlikely that Child has feelings one way or another about his mother and his permanency. Like adult clients, effective representation of a child requires, at a bare minimum, attempting to ascertain the client's position and advocating in a manner designed to effectuate that position. It may be that Child's preferred outcome in this case is synonymous with his best interests. It may be that Child wants no contact with Mother. Child may be unable to articulate a clear position or have mixed feelings about the matter. Furthermore, termination of Mother's rights may still be appropriate even if Child prefers a different outcome. However, it is clear that where a court appoints an attorney ostensibly as counsel, but the attorney never attempts to ascertain the client's position directly and advocates solely for the child's best interests, the child has been deprived impermissibly of his statutory right to counsel serving his legal interests.

Id. at 590-91 (citation omitted).

Id. at 1203-04 (some citations omitted) (some formatting).

Returning to the current appeal, this Court concluded:

[W]e have no basis to conclude that Children were provided with counsel who represented their legal interests and took direction from Children to the extent possible due to their ages. . . . Because of these deficiencies, we must vacate the order terminating Mother's parental rights involuntarily, and remand for counsel to conduct an additional interview of Children to discern their legal interests directly. Once Attorney Kubista has done so, she must notify the orphans' court. If Children's express preferred outcomes are consistent with the result of the prior proceeding, or if Children are unable or unwilling to articulate a clear preferred outcome, the court may reenter its January 16, 2018 order. If the Children's preferred outcomes are inconsistent with the result of the prior proceeding, the court must conduct a new termination hearing, with counsel actively advocating for their legal interests.

I d. at 1205-06 (footnote omitted). This Court did not provide any timeframe in which Attorney Kubista or the orphans' court must comply with its directive. See generally id.

Pursuant to this Court's opinion, Attorney Kubista sent a letter to the orphans' court on December 31, 2018, stating:

> I have conducted additional interviews as well as telephone conferences with the minor children . . .
>
> As per my interviews and telephone conferences, the children's positions are consistent with the original result of the termination proceeding held on November 3, 2017. The minor children were very clear with their positions in regard to the termination of Mother's rights in this matter. The children are adamant that they wish for their Mother's rights to be terminated and reemphasized how Mother has not been in their lives for an extended period of time.
>
> I would request as legal counsel for the children in this matter, that Your Honorable Court reenter its January 16, 2018 Order.

Letter from Courtney L. Kubista to the Honorable Paul E. Cherry (December 31, 2018).

On January 16, 2019, the orphans' court entered an order stating that it had received Attorney Kubista's letter and, upon consideration thereof, "is satisfied that the children's express preferred outcomes are consistent with the findings of the prior proceeding;" accordingly, the orphans' court reentered its order dated January 16, 2018, involuntarily terminating Mother's parental rights to Children. Order, 1/16/2019.

As Attorney Kubista and the orphans' court have satisfied this Court's instructions, we will now address the merits of Mother's appeal. See M.D.Q., 192 A.3d at 1202-06.

Mother now presents the following issues for our review:

ISSUE I

Did the trial court err in determining that Father/Step-mother presented clear and convincing evidence that grounds for involuntary termination exist?

ISSUE II

Did the trial court err in determining that involuntary termination of Mother's parental rights are in the best interest of the Children?

ISSUE III

Did the trial court err by permitting testimony regarding Mother absconding after the date of filing of the petition for involuntary termination but denying Mother the ability to testify to events after the date of filing the petition for involuntary termination?

ISSUE IV

Did the trial court fail to properly consider Mother's periods of custody with the minor Children immediately preceding her incarceration?

ISSUE V

Did the attorney for the [C]hild[ren] err by not interviewing the Child[ren] for excess of five (5) months despite an order of court directing an additional interview be completed?

ISSUE VI

Did the trial court err by relying on additional information supplied by the attorney for the [C]hild[ren] after a significant time delay took place?

Mother's Brief at 4-5 (suggested answers and unnecessary capitalization omitted).

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.
>
> The standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.
>
> The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result.

In re B.J.Z., 2019 PA Super 106, *9-*10 (filed April 4, 2019) (internal quotation marks and some internal citations omitted) (some formatting).

Mother contends that the orphans' court abused its discretion by terminating her parental rights. Mother's Brief at 11-16.[1] Although she

---

[1] Despite only listing six issues in her statement of questions involved pursuant to Pa.R.A.P. 2116, Mother divides the "Argument" section of her brief to this Court into four subsections, hence violating Pa.R.A.P. 2119(a), which mandates that "argument shall be divided into as many parts as there are questions to be argued."

> The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our Court and its rules committee of the most efficacious manner by which appellate review may be conducted so that a litigant's right to judicial review

acknowledges that her "last physical contact with [C]hildren was in September of 2016, immediately preceding her incarceration[,]" she argues that she "has begun searching for housing that would be appropriate for" Children, "knows she suffers from addiction[,] and is working on it as [C]hildren are what she must fight for."  Id. at 12, 16 (citations omitted).

The trial court terminated Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1) and (b).  Requests to have a natural parent's parental rights terminated are governed by 23 Pa.C.S.§ 2511, which provides, in pertinent part:

> (a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> \* \* \*
>
> (b) Other considerations.—The court in terminating the right of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any

_____

as guaranteed by Article V, Section 9 of our Commonwealth's Constitution may be properly exercised.

Commonwealth v. Briggs, 12 A.3d 291, 343 (Pa. 2011).

efforts by the parent to remedy the condition described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (b).

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re G.M.S., 193 A.3d 395, 401 (Pa. Super. 2018) (citation omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Paul E. Cherry, we conclude Mother's first two issues merit no relief. The orphans' court opinion comprehensively discusses and properly disposes of those questions. See Orphans' Court Opinion, filed January 16, 2019, at 3–5 (finding for (a)(1): prior to her incarceration in September 2016, Mother sporadically exercised her periods of partial custody with Children; however, upon her incarceration, she never contacted Children, Father, Stepmother, or any other person who could convey letters or messages to Children; Mother made no attempt to contact Children after her release from prison in April 2017; Mother failed to perform any parental duties or to provide any financial support for Children since July 2016 at the latest, despite having shared legal custody; Petitioners

thus have adequately shown that Mother's conduct satisfies the statutory grounds for termination according to § 2511(a)(1)) (finding for (b): Children consider Petitioners to be their parents; Children were not interested in Mother and had not seen her in some time; Mother and Children share no emotional bond; it is in Children's best interests to terminate Mother's parental rights).

Our only addition is that Mother's claims that she will eventually obtain appropriate housing and "is working on" her addiction are unpersuasive and inadequate to preserve her parental rights. Mother's Brief at 16. "Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs." In the Interest of K.Z.S., 946 A.2d 753, 759 (Pa. Super. 2008) (citation omitted).

As for Mother's remaining challenges, her claims that the orphans' court "erred by permitting testimony regarding Mother absconding after the date of filing of the petition for involuntary termination but denying Mother the ability to testify to events after the date of filing the petition for involuntary termination" and erred by failing "properly" to "consider Mother's periods of custody prior to incarceration" merit no relief. Mother's Brief at 11, 16.

Mother's incarceration began in September 2016. M.D.Q., 192 A.3d at 1202. The termination petitions were filed on May 1, 2017 – seven months later. Id. at 1203. Consequently, the six months required by 23 Pa.C.S. § 2511(a)(1) had elapsed, and the "events after the date of filing the petition

for involuntary termination" and "Mother's periods of custody prior to incarceration[,]" Mother's Brief at 11, 16, were irrelevant to this requisite calculation of time for Subsection 2511(a)(1).

To the extent that Mother is arguing that "events after the date of filing the petition for involuntary termination" were relevant to 23 Pa.C.S. § 2511(b), that subsection explicitly states: "With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the condition described therein which are first initiated subsequent to the giving of notice of the filing of the petition" (emphasis added). Ergo, no testimony provided by Mother about her actions after the filing of the termination petition on May 1, 2017, could be considered as part of the Subsection 2511(b) analysis.

Finally, Mother urges this Court to find that an error "occur[red] when the attorney for the Children did not interview the Children and respond to the court for an excess of five (5) months" and "the trial court . . . relied on a letter without inquiry as to the delay." Mother's Brief at 18. Although Mother is correct that over five months passed between this Court's decision on July 6, 2018, and Attorney Kubista's letter dated December 31, 2018, this Court did not provide a timeframe for completion of counsel's additional interviews with Children to discern their legal interests. See M.D.Q., 192 A.3d at 1205-06. Mother provides us with no case law – and we are aware of none – that counsel

must complete this Court's instructions on remand within a specific timeframe unless such a timeline is explicitly stated in the remanding decision.[2]

Based on the foregoing, we conclude the orphans' court did not abuse its discretion by terminating Mother's parental rights to Children. See B.J.Z., 2019 PA Super 106, *9-*10. Accordingly, we affirm, partially on the basis of the trial court's opinion. The parties are instructed to attach the opinion of the trial court to any filings referencing this Court's decision.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2019

_____

[2] In Children's brief to this Court, Attorney Kubista states that her first interview with Children after receiving this Court's memorandum was on August 1, 2018. Children's Brief at 21. She continues that she "had additional questions for" Father after that initial interview with Children and that any further delay was beyond her control, as "Father missed several conferences which were all made known to his legal counsel through various telephone calls and letters." Id. at 11, 21. She concludes that she "directly spoke to Mother's legal counsel and advised her that the delay was due to missed office appointments which she failed to acknowledge in her brief." Id. at 22.

There is no indication that any of the above information was made part of the certified record of the orphans' court or that the orphans' court was otherwise aware of it. We may not thereby consider Attorney Kubista's assertions in Children's Brief, albeit that we have no reason to doubt their veracity. See Official Note to Pa.R.A.P. 1921 ("An appellate court may consider only the facts which have been duly certified in the record on appeal.")

OFFICE OF THE CLERK OF ORPHANS
COURT OF CLEARFIELD COUNTY

JAN 16 2018

MAURENE E. INLOW
Clerk

## IN THE COURT OF COMMON PLEAS OF CLEARFIELD COUNTY, PENNSYLVANIA

### ORPHANS COURT DIVISION

RECORDED
01/16/2018 11:29:19 AM
MAURENE E. INLOW
REGISTER AND RECORDER
CLEARFIELD COUNTY
Pennsylvania
Inst Num: 201800583

RECORDED
01/16/2018 11:29:46 AM
MAURENE E. INLOW
REGISTER AND RECORDER
CLEARFIELD COUNTY
Pennsylvania
Inst Num: 201800584

IN RE: ADOPTION OF M        :
D    Q    , DOB   /2011, and   :    OC No. 3412-2017
M    C.  Q  , DOB   2009 :    OC No. 3413-2017
        :

### OPINION and ORDER

#### I. Background and Procedural History

On May 1, 2017, a Petition for Involuntary Termination of Parental Rights of A

M    -Q    ["Mother"] was filed by Petitioners, C        Q    ["Father"],

and his wife, A.    Q   ["Stepmother"]. Father and Mother are the parents of minor

children, M  . D   Q  , DOB   /2011, and M    C  Q    DOB   '2009,

["Children"] who are the subject of the Petition.

The Petition, which is presently before the Court, requests that the Court terminate the

parental rights of Mother with respect to the Children. In support of this request, Petitioners

allege that Father currently has primary physical custody of the Children, that Mother has had

no contact with the Children since September of 2016, and that Mother has refused and has

failed to perform her parental duties in regards to the Children for a period of at least six (6)

months prior to the filing of the Petition, evidencing a settled purpose of relinquishing her

parental claim to the Children.

By way of background, Mother and Father were married at the time of birth for each

child, and ultimately divorced in February of 2016. Following several custody filings by the

parties and Paternal Grandparents, a Custody Consent Order was entered into with Mother,

Father, and Paternal Grandparents on May 26, 2016, with all parties sharing legal custody of



1

the Children, Father maintaining primary physical custody, and Mother having periods of partial custody.

The parties followed the Custody Order until September of 2016, when Mother was incarcerated in the Clinton County Jail and the State Correctional Institution at Muncy ["SCI Muncy"]. Mother was subsequently released from SCI Muncy on April 13, 2017 and sent to live in a halfway house, from which she absconded in May of 2017 and was not located until the summer. Mother made no contact with the Children during her time of incarceration or after.

On November 3, 2017, a hearing was held before the Court regarding the Petition. Following said hearing, the Court ordered the parties to submit briefs in support of their respective positions. Being in receipt of said briefs, the Court is now prepared to rule on the matter.

## II. Analysis

Pursuant to 23 Pa.C.S.A. § 2511 and Pennsylvania case law, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination as delineated in 23 Pa.C.S.A. § 2511. Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis; the determination of the needs and welfare of the child under the best interests of the child standard. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the

2

child of permanently severing any such bond. *In re L.M.*, 923 A.2d 505, 511 (Pa. Super. Ct. 2007)(citing *In re R.J.S.*, 901 A.2d 502, 507 (Pa. Super. Ct. 2006)).

In the present matter, Petitioners seek termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), which states, "[t]he parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either had evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties." It is acknowledged by all parties that prior to Mother's incarceration she sporadically exercised her periods of partial custody with the Children. However, upon her incarceration, Mother did not once make contact with the Children, Father, Stepmother, or any other person who could convey letters or messages to the Children. Mother testified in the hearing that she sent letters to the children multiple times a week while incarcerated. However, Mother never produced evidence to show this to be true, and Father and Stepmother both testified that they never received any mail for the Children during Mother's incarceration. Testimony was provided to show that Father, Stepmother, and Paternal Grandmother all maintained the same addresses and phone numbers during the time of Mother's incarceration and absence. The parties presented conflicting testimony as to whether Mother attempted to contact the Children by phone while she was incarcerated. As proof, Mother provided a call log to show that Father had blocked her from calling him on his cell phone. However, upon inspection of the log, it was determined that Mother was calling an incorrect number. Thus, the fault for the Children never receiving a call from Mother falls squarely on her. What is most telling to this Court about Mother's intentions is that Mother acknowledged that she made no attempt to contact the Children after her release from prison, when she would have had the greatest means for doing so. Instead, she absconded from the halfway house in which

3

she was required to live, and was on the run for several months. These actions clearly indicate to this Court that Mother is willing to put her own interests before the need to maintain a relationship with her Children.

Testimony also shows that Mother has failed to perform any parental duties with respect to the Children, or provide any financial support since June or July of 2016, despite having shared legal custody. Thus, Father and Stepmother have been the primary supporters of the Children's mental, emotional, and financial needs. Upon consideration of the testimony as provided by both parties, this Court has determined that Father and Stepmother have adequately shown that Mother's conduct satisfies the statutory grounds for termination as delineated in 23 Pa.C.S.A. § 2511.

When the Court finds a parent's conduct warrants termination of his or her parental rights, the Court must then engage in the second part of the analysis, considering the needs and welfare of the child applying a best interests of the child standard. In her brief, Counsel for the Children stated that she spoke with the Children to discuss their positions on the termination. It is clear from Counsel's summary of the conversations that the Children both see their Stepmother as fulfilling the motherly role in their lives. The Children did not seem as concerned with discussing their Mother, whom they acknowledged they had not seen in some time. It appears to this Court that the Children's needs are being sufficiently met by Father and Stepmother, and that termination of Mother's rights would have no great impact on the Children at this time or in the future, as they seem to share no emotional bond. Alternatively, allowing Mother to continue to enter and exit the Children's lives on her whim is likely to confuse and detrimentally impact the Children's emotional needs. Therefore, this

4

Court has determined that it is in the Children's best interest to terminate Mother's parental rights.

For this reason and the others stated herein, the Court enters the following:

## ORDER

AND NOW, this 16th day of January, 2018, upon consideration of the Petition for Involuntary Termination of Parental Rights of Mother, the well-reasoned briefs of the parties in support of their respective positions, and a hearing on the same, it is the ORDER of this Court that said Petition be and is hereby GRANTED. Accordingly, the parental rights of A         M(         -Q(     with respect to minor children, M ¨         D      ·Q·     , DOB /2011, and M         C   Q·     DOB ·     /2009, shall be are hereby TERMINATED.

BY THE COURT,

_____
PAUL E. CHERRY,
JUDGE

in office mailbox
Copies handed and/or mailed to the
following on Jan. 16     2018 :
Ryan Sayers Esq
Courtney Kubista Esq
2- Heather Bozovich Esq

5