J-A08029-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.L.A., BIOLOGICAL | : | |
| MOTHER | : | No. 1527 WDA 2018 |

Appeal from the Order Entered September 27, 2018
In the Court of Common Pleas of Allegheny County
Juvenile Division at No:  CP-DP-0002379-2011

BEFORE:  PANELLA, P.J., STABILE, J., and McLAUGHLIN, J.

DISSENTING MEMORANDUM BY STABILE, J.:      **FILED JANUARY 06, 2020**

I respectfully dissent.  In my opinion, both the juvenile court and this Court's Majority erred by conflating the weight to be accorded a child's preference in a dependency proceeding with the separate evidentiary consideration of competency.  Here, Child, a 7-year-old, very clearly expressed his preference to be with Mother, contrary to the guardian ad litem's (GAL) recommendation.  The GAL appropriately requested the juvenile court to appoint separate legal counsel for Child, as it became apparent there was a conflict between Child's legal and best interests.[1] Instead of weighing Child's preference, the juvenile court dismissed Child's testimony, without

_____

[1] While Child's GAL suggested initially that his legal interests were in conflict with his best interests, she now maintains on appeal that the juvenile court acted correctly by declining to appoint separate legal counsel.  GAL's Brief at 9-23.  I note that the organization KidsVoice is serving as Child's GAL in this case.  Two attorneys signed the GAL's brief on appeal and this Court's docket lists three attorneys as Child's GAL.  For the sake of convenience, I will refer to Child's GAL as a single person.

ever inquiring as to why Child preferred to live with Mother, finding Child not competent. The juvenile court reached this conclusion because it determined Child was not able to provide legal guidance to his counsel, as Child was not able to ascertain the facts at issue in these proceedings. These considerations were contrary to law that mandates that a child's preference be ascertained *to the fullest extent possible* and confused the weight to be accorded Child's testimony with the issue of competency. In my opinion, the court abused its discretion in concluding Child was not competent to offer testimony and by not appointing separate counsel to represent Child's legal interests.

The Juvenile Act governs dependency proceedings. **See** 42 Pa.C.S.A. §§ 6301–6375. Section 6311(a) provides, as relevant here, that in a dependency proceeding the court "shall appoint a guardian ad litem to represent the legal interests and the best interest of the child". Where a conflict exists between a child's preferences and a GAL's recommendation, a court is required to appoint separate counsel to represent the child's legal interests. **In re Adoption of L.B.M.,** 161 A.3d 172 (Pa. 2017). Among the mandatory duties imposed upon a GAL is the obligation to

> **Advise the court of the child's wishes to the extent that they can be ascertained and** present to the court whatever evidence exists to support the child's wishes. When appropriate because of the age or mental and emotional condition of the child, **determine to the fullest extent possible the wishes of the child and communicate this information to the court.**

42 Pa.C.S.A. § 6311(b)(9) (emphasis added);[2].*see* Pa.R.J.C.P. 1154(9). Nowhere does this statute condition admissibility of a child's preference upon an ability to appreciate or understand the legal intricacies or factual issues pertaining to a dependency proceeding. To the contrary, this provision requires that counsel, to the fullest extent possible, ascertain a child's preference so that preference can be communicated to the court. The fact that a child may be very young, yet still communicative, does not render meaningless a child's expressed preference. A GAL is relieved of the obligation to advance a subjective preference on a child's part only when the preference is incapable of ascertainment, as with a child of a very young age, *i.e.* 2 and 3 years old, who cannot have formed a subjective, articulable preference that can be advanced by counsel. **In Re T.S.**, 192A.3d 1080, 1089-1090 (Pa. 2018). Under those circumstances, the GAL has no duty to advise the court of any such preference, since for purposes of the proceeding, such wishes do not exist. **Id.** When that occurs, the GAL may represent both the child's best and legal interests. **Id.** at 1092. Such was the case in **T.S.** where the children were two and three years old and not capable of forming a subjective, articulable preference to be advanced by counsel. Conversely, children as young as 5 or 6 years old may have opinions that are entitled to weight in legal proceedings. **T.S.** at 1089, n. 17, citing Pennsylvania Rules of

---

[2] Our Supreme Court suspended Section 6311(b)(9) to the extent it directs that a difference between a child's wishes and the GAL's recommendation shall not be considered a conflict. Pa.R.J.C.P. 1800(3); **see** Pa.R.J.C.P. 1154, *Cmt*.

Professional Conduct 1.14, Explanatory Comment 1. Even a client with a diminished capacity often has the ability to understand, deliberate upon, and reach conclusions about a matter affecting the client's own well-being and those opinions are entitled to weight in legal proceedings concerning their custody. *Id.* Simply stated, if a child can express a preference, that preference is to be communicated by counsel to the court for the court to accord that preference whatever weight the court deems appropriate in its discretion.

Competency on the other hand is another matter. Competency concerns the minimal capacity of a witness to communicate, to observe an event, to accurately recall that observation, and to understand the necessity to speak the truth. *Commonwealth v. Delbridge*, 855 A.2d 27, 40 (Pa. 2003). All witnesses are deemed competent, unless disqualified by statute or rule. "In general, the testimony of any person, regardless of his mental condition, is competent evidence unless it contributes nothing whatsoever because he is wholly untrustworthy." *Commonwealth v. Ware*, 329 A.2d 258, 267 (Pa. 1974). These concepts are embodied in Pennsylvania Rule of Evidence 601 that provides as follows:

> **(a) General Rule***.* Every person is competent to be a witness except as otherwise provided by statute or in these rules.
>
> **(b) Disqualification for Specific Defects***.* A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:
> **(1)** is, or was, at any relevant time, incapable of perceiving accurately;

- 4 -

**(2)** is unable to express himself or herself so as to be understood either directly or through an interpreter;
     **(3)** has an impaired memory; or
     **(4)** does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601. Notably, an ability to understand the nature of a legal proceeding is not a basis for testimonial disqualification for lack of competency under Rule 601. With respect to children as witnesses, competency characteristics have been described in the well-regarded Pennsylvania Dependency Benchbook as follows. To testify, a child must have the physical and mental capacity to observe, or in other words, to receive correct impressions by their senses. With respect to memory, children must have good memory capacity, but the ability to recall events should almost never pose a barrier to testimony. Rather, whether a child's memory is accurate is a matter of credibility, not testimonial competence. A child must be able to communicate in order to be understood. A child must possess a threshold level of intelligence, but need not be of normal intelligence. Even children below average intelligence may testify if they have the ability to observe, recollect, and relate in a manner that assists the finder of fact. With respect to the difference between truth and falsehood, a child need not comprehend the finer points of truth and falsity, nor must he understand the concept of perjury. Rather, the child may articulate the necessary understanding in childlike terms. The fact that a child makes mistakes or is to some degree inconsistent does not render the child incompetent. When developmentally appropriate methods are used to question children, most youngsters demonstrate the necessary

understanding. Finally, children as young as three or four comprehend the duty to tell the truth in court. For young children, telling the truth means reporting what they saw. *See* Administrative Office of Pennsylvania Courts Office of Children and Families in the Courts, Pennsylvania Dependency Benchbook, at § 20.6.2 (2019) (quotation marks and citations omitted).

I believe it also is worth recognizing that we are not here dealing with the usual situation of examining a witness's competency to provide testimony as a fact witness to an event. Rather, the trial court in dependency is charged with considering the wishes of a child to the fullest extent possible in coming to a placement in the best interests of a child. To that end, relevant testimony bears upon how a placement will affect a child, and who is best suited to provide that testimony than the child, if the child is able to communicate. Even a communicative child with diminished capacity who can relate how a placement may affect them emotionally and otherwise is entitled to be heard. This is so, even if what a child relates may not be in their best interests. Therefore, it is not surprising that the legislature mandated in Section 6311(b)(9) of the Juvenile Act that a child's wishes must be ascertained to the fullest extent possible without any age qualifier. It remains a matter of weigh not competency for a court to consider a child's testimony as to how a placement may affect a child.

During its *in camera* interview of Child the court elicited from Child that he knew he was staying with his aunt, but only knew her as "Aunt [B]". Child was able to relate he was in second grade, math was his favorite subject, he

was good at math, liked to learn, and attended Spring Hill Elementary School. He liked to exercise at gym and has known his best friend since kindergarten. Child further related he gets to see his mom on weekends only and that sometimes we (an obvious reference to Child and his caregiver) go to visit her and sometimes she comes to us. He knows he is an uncle and likes to play with the baby and knows the baby likes him as she always touches his face. Child understands baby is only seven months old. When asked if he wants to stay with his aunt or go somewhere else, Child responded: **"I want to go with my mom."** Child further testified that when he spends weekends with his mom, they like to watch movies and eat popcorn. Child knew that Mother was employed and works on a truck making doughnuts. His favorite doughnuts are the black and yellow jimmies. When asked if he knew what changed between his living and not living with his mom, Child did not know. Child also could not respond when asked what he thought the difference was with his mom. Based upon this interview, the court concluded Child was low functioning, unable to answer basic questions about his own circumstances, did not have the mental maturity of a seven-year-old to comprehend the circumstances that led to his removal, and could not identify any progress or regress Mother made over the period of care. The court then concluded Child was "not competent to give legal direction to his Attorney, as he is unable to ascertain the facts at issue in these proceedings." Continuance Order, filed Sept. 26, 2018.

The juvenile court's measure of Child's competence based upon his knowledge of dependency proceedings missed the relevant criteria governing competency under Rule 601. When the Rule 601 criteria are applied in this case, it is clear Child by any measure, was competent to provide testimony respecting his preference for placement. Child's interview with the juvenile court confirmed that he is capable of perceiving events accurately, and that he is able to express himself so as to be understood, contrary to the disqualifying criteria under Rule 601(b)(1) and (2). Most importantly, Child is the only person who can express his preference for placement, as this is personal to him. Further, there is no indication in the record that Child's memory of events is impaired in some way, or that he does not sufficiently understand his duty to tell the truth when speaking to the court pursuant to Rule 601(b)(3) and (4).

Additionally, while the juvenile court raises a host of objections to Child's ability to provide "legal direction" to his attorney, the court's position is without support in the record. Specifically, the record refutes the court's finding that Child is "very low functioning" and unable to answer "basic questions about his own life's circumstances." Juvenile Court Opinion, 11/26/18, at 6 (unnumbered pages). Child answered numerous questions regarding the circumstances of his life during his *in camera* interview, providing details such as what school he attends, the length of time he has known his best friend, the name and age of his newborn niece, and what Mother does for a living. Child was unable to answer only a few of the court's

inquiries. Child did not know his aunt's last name, nor did he know why he was not living with Mother at that time. In addition, he was unable to answer two rather vague questions: "What do you think has changed between you not living with your mom and you living with your mom, what do you think the difference is?" and "What do you think the difference about her is?" Respectfully, it is not even entirely clear to me what information the court was attempting to elicit with these questions.

I also find unpersuasive the juvenile court's conclusion that Child is incapable of understanding "the circumstance that led to his removal from his Mother" and identifying "any progress or regress [M]other has made over the period of care." *Id.* (footnote omitted). It is doubtful that any young Child in foster care fully understands the reasons for his or her placement or the level of progress that a parent may or may not be making. In some cases, it may be inappropriate to share this information with a Child due to its sensitive nature. As this Court explained in a recent involuntary termination case, it is the duty of a Child's legal representative to explain to him or her the nature of the legal proceedings "commensurate with a child's level of development[.]" *In re Adoption of M.D.Q.*, 192 A.3d 1201, 1205 n.2 (Pa. Super. 2018).

Regardless, the Juvenile Act and our Rules of Juvenile Court Procedure require that a child receive an attorney representing his or her legal interests. If a juvenile court believes that a child is "very low functioning," or that his or her wishes are unreasonable or based on incomplete information, it is within the court's discretion to afford those wishes little weight. Our law does not

require that a court return a child to his or her parent's care merely because that is the child's preference. It does require, however, that the child receive counsel to advocate for that preference during the proceedings. Remarkably, after receiving Child's response that he wanted to be with Mother, the court never asked Child why he had that preference and thus perhaps failed to elicit some of the most important facts to this dependency proceeding. I would stress that courts should not be quick to dismiss a child's views without making an effort to ascertain the basis and the motivations for those views.

I respectfully also take issue with the Majority's statement that because Child was unable to articulate any reason for his preferred outcome and did not exhibit an understanding of events that necessitated his placement, that his statement that he wanted to live with Mother was insufficient to reverse the juvenile court's decision not to appoint separate legal counsel. As stated, although Child very clearly expressed his preference to be with his Mother, he **never** was asked why he held that preference. Since Child was never asked why he preferred to be with his Mother, the Majority's conclusion that the juvenile court's findings are supported by the record is unfounded.

Finally, I believe both the Majority's and juvenile court's reliance on ***In re J'K.M.,*** 191 A.3d 907 (Pa. Super. 2018) is unavailing. Unlike the seven-year-old child here, the juvenile in ***J'K.M.*** was 16 years old. While it is correct that this Court in ***J'K.M.*** discussed the concept of witness competency when reaching its decision, it is apparent that this Court referenced the idea of competency in ***J'K.M.*** only in passing, as a way of stressing that juvenile

- 10 -

courts should err on the side of concluding that a child is capable of expressing his or her wishes. Here, the juvenile court appears to have used our discussion in **J'K.M.** for the exact opposite purpose, to limit the circumstances under which Child would be entitled to separate legal counsel.

Based on the foregoing analysis, I would reverse the portion of the juvenile court's order finding that Child is incompetent to provide "legal direction" to an attorney, and remand for the court to appoint separate legal counsel. Because Child's GAL also represents his sister, A.W., whose legal interests are reportedly different from Child's legal interests, the court should not appoint her as counsel. Nonetheless, the GAL may continue in her current role and represent Child's best interests during the ongoing dependency proceedings.